### W. M. MOORE, COUNTY JUDGE, ET AL. v. W. W. COFFMAN ET AL.

#### No. 2971.  Decided January 30, 1918.

**1.—County Bonds—Vote Authorizing—Bridge—Change of Location.**

The Commissioners Court of a county having submitted to popular vote the question of authorizing an issue of bonds for building a bridge, and designated in the proposition submitted the location of same as being at a named and well known crossing of the river, could not thereafter devote the proceeds of such bonds to building a bridge at a point several miles distant from the location specified, and were properly restrained from so doing, at suit of taxpayers.  (Pp. 95-97.)

**2.—Same.**

The designation of the purpose for which proposed county bridge bonds were to be authorized by popular vote being within the power of the Commissioners Court submitting the proposition to election, it was not improper, nor an action so in excess of their power as to be regarded as a nullity, that in so doing they should name the location of the bridge for building which the bonds were to be authorized; and having done so, good faith to the taxpayers voting such bonds demanded that the proceeds be expended on a bridge at the point so designated and voted on.  (Pp. 95, 96.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Knox County.

Coffman and others obtained injunction against Moore and others restraining them from expending the proceeds of county bonds issued by authority of a vote of the taxpayers at a location other than the one designated in the proposition submitted and voted on.  Writ of error was granted by the committee of judges on the affirmance of such judgment by the appellate court.

*Ocie Speer, Marvin H. Brown,* and *Milam & Wheat,* for plaintiff in error.—While it is the duty of the Commissioners Court to submit to the voters for their determination whether or not the Commissioners Court shall issue bonds of the county for the purpose of building bridges, yet the manner and place of the building of such bridges is a power and duty vested by law in the Commissioners Court, and said powers can not be delegated to the voters of said county or to any other person.  The place at which such a bridge is to be constructed is a matter resting in the sound discretion of the Commissioners Court, and such court can not, by contract, representation or other act, divest itself of the power or duty to exercise such discretion in the interest of the citizens generally, of the county which they represent.  Vernon's Sayles' Texas Civ. Stats., arts. 605, 606, 610 and 2241, sec. 4; State v. Swisher,

17 Texas, 441; Ex parte Mitchell, 177 S. W., 953; Audrey v. Zang, 127 S. W., 1114; Molacek v. White, 122 Pac., 523; Edwards v. Goldsboro, 53 S. E., 652; Martin v. Mayor, 1 Hill (N. Y.), 546; 1 Dillon on Municipal Corporations, 4th ed., p. 156.

It being an admitted fact upon the trial of the case that the Commissioners Court of Knox County, after the election had been held and the result declared, made a thorough investigation for the purpose of determining where the bridge in controversy should be located, and thinking it within their sound discretion, and exercising the same, determined that the Decker or McQuiston crossing on the Brazos River was a more desirable location for said bridge and would serve a greater number of people of the county than any other point on the Brazos River within six or seven miles, the judgment of the District Court is not supported by the evidence. Same authorities. Also Spence v. Harvey, 22 Cal., 336, 83 Am. Dec., 69; Filson v. Himes, 5 Pa. St., 452, 47 Am. Dec., 422; Randolph County v. Jones, Breese (Ill.), 103; Colburn v. El Paso County, 61 Pac., 241; Providence Tool Co. v. Norris, 69 U. S. (2 Wall.), 45; Martin v. Mayor of Brooklyn, 1 Hill, 546; Gale v. Kalamazoo, 23 Mich., 344; Fuller v. Dame, 18 Pick., 472; 15 Am. & Eng. Ency. of Law (2nd ed.), p. 394; Glenn v. Moore County, 52 S. E., 58; Ex parte Mitchell, 177 S. W., 953; City of Austin v. Nalle, 85 Texas, 520; Benson v. Bawden, 149 Mich., 584, 113 N. W., 20, 13 L. R. A. (N. S.), 721; Russell v. Courier Pr. & Pub. Co., 95 Pac., 936; McCortle v. Bates, 29 Ohio St., 419, 23 Am. Rep., 758; 6 Ruling Case Law, sec. 148.

*D. J. Brookerson*, for defendants in error.—The Commissioners Court of Knox County could not issue its bonds for any purpose without first obtaining authority to do so by submitting to its qualified voters a proposition, and "the proposition to be submitted for the issuance of bonds shall distinctly specify the purpose for which the bonds are to be issued," and they having obtained such authority by submitting such a proposition to its voters distinctly specifying therein such purpose to be "for the purpose of constructing two public bridges across the Brazos River, one west of Knox City, at or near the Brock crossing, the other north of Goree, at or near the Bill Coffman crossing on said river," they can not legally use the funds arising from such bonds for any purpose other than that for which they were authorized to issue same. Vernon's Sayles' Civ. Stats., arts. 605 and 606; Simpson et al. v. City of Nacogdoches, 152 S. W., 858.

We believe that it was absolutely necessary, under the circumstances, in order to comply with the requirements of article 606, to specify the place where the two bridges were to be located, but, if it was possible to comply with such without specifying the place, still, since the commissioners chose to designate the place, and make it a part of the "purpose" for which the bonds were to be voted, and having entered of record their "purpose" in this manner, in the most solemn manner provided by law,

in formal orders of record in the permanent minutes of their court, and having issued their notices, so embodying this location as a part of their purpose, such could not now be considered as surplusage.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

This suit concerns the use of the proceeds of bonds issued by Knox County for the building of two bridges across the Brazos River. The petition for the bond election presented by property owners to the Commissioners Court designated the places in the county on the river where it was desired the two bridges should be built,—the "Brock Crossing" and the "Bill Coffman Crossing," each a well known location. The order of the court for the election and the notice of it likewise designated, as a part of the stated purpose of the proposed bond issue, these two crossings as the intended locations of the bridges. The result of the election was favorable to the issuance of the bonds and was duly declared. Afterwards, the Commissioners Court determined that another place, distant five or six miles, was a more desirable location for the bridge that it was originally proposed should be erected at the Coffman Crossing, and announced its purpose to there locate it. It is agreed that this conclusion reflected the honest judgment of the court. Thereupon W. W. Coffman and a number of other property owners of the county subject to the tax for the bonds brought this action to enjoin the diversion of their proceeds to the construction of the bridge in question elsewhere than at or near the Coffman crossing. Upon the trial a permanent injunction to this effect was granted. This judgment was affirmed by the Court of Civil Appeals. A writ of error was allowed by the Committee of Judges.

It was the duty of the Commissioners Court under the statute (art. 606), in stating the proposition to be voted on in the bond election, to specify, both in its order for the election and in the notice of the election, the purpose for which the bonds were to be issued. The reason of this requirement is that the voters in such an election are entitled to know, beforehand, the specific use to which their taxes levied in virtue of the election are to be put. The design of the statute is that the purpose of the bonds shall be stated in such way as to fairly and fully apprise the voters of it. No particular form is prescribed for its statement, and the way in which it shall be stated so as to accord with the spirit of the statute is necessarily left to the Commissioners Court. In this instance, the court in defining the proposition in respect to the purpose of the bonds, saw fit to declare that it was not only to construct these two bridges, but to construct them at certain designated locations. Stating the purpose in this manner contravened no law; hence the court was privileged to thus announce it. Since the court by deliberate action made the location of the bridges a part of the proposition submitted, it is fair to conclude that their erection at the locations named constituted in the court's mind an essential part of the purpose of the bonds. If so, it must have intended that the voters in the election should under-

stand that included in such purpose was the building of the bridges at these particular places. That the voters did so understand can hardly be denied.

If it was within the lawful power of the court to so declare the purpose of the bonds; if it intended that the voters should understand their purpose to be the erection of the bridges at these particular crossings; and the voters cast their ballots accordingly, we think that is an end of the question. It then becomes simply a matter of keeping faith with those whose will the election expressed.

To say, as is urged, that the incorporation of the location of the bridges in the Commissioners Court's statement of the purpose of these bonds was surplusage and is, therefore, of no effect, is to deny to those courts the power of so declaring the purpose of a bond issue of this character as a means of fully acquainting the property owning voters of a county with the exact use intended to be made of the bonds. For if the court had the power to include in its definition of the purpose of the bonds so material a matter as the proposed locations of the bridges, that part of the stated purpose can not be regarded as mere surplusage. It can be so treated only upon the theory that the court in so including it transcended its authority, and for that reason is not bound by it. We decline to so hold. The specific use to which it is intended by public officials that public moneys shall be applied is always of concern to those upon whom taxation rests the burden of the expenditure. In the matter of bond issues authorized by the vote of the citizenship affected, in the submission of the proposition the law encourages, rather than frowns upon, a full and definite statement of their purpose. The location of an expensive public improvement dependent upon such bond issues is frequently of as prime importance as its construction. In such cases it is only fair to the voters in the election called to determine the matter to inform them in advance of the intended location, so that the actual merits of the given proposal, into which the question of location may largely enter, shall decide the contest. When this is done, the location is a part of the vote and is entitled to an equivalent protection. We can perceive nothing in such a course that either trenches upon or exceeds the authority possessed in these matters by Commissioners Courts or municipal bodies, or that amounts, as is contended, to a surrender of their duty into other hands.

A similar question was presented in Major v. Aldan Borough, decided by the Supreme Court of Pennsylvania, 209 Pa. St., 247. Under the laws of that State an increase of municipal indebtedness beyond a certain amount requires the assent of the electors of the municipality at a public election. All that is voted upon at the election is merely whether the indebtedness shall be increased, the electors having no voice in determining the purpose for which it is to be incurred. It was proposed to increase the indebtedness of Aldan Borough in such an amount as required the consent of its electors. In the ordinance proposing the increase the purpose was expressly stated. As to the authority of the

borough officials to use the money voted for a purpose different from that by them thus declared and acted upon by the voters in the election, notwithstanding their power under the law, as a general rule, to determine the purpose to which such funds should be applied, this was said by the court:

"When, by an ordinance, the municipal authorities direct, in conformity to the constitutional requirement, the submission to a popular vote of the question of the increase of the indebtedness, the purpose for increasing it is distinctly set forth, and, in the notice of the election, this purpose again appears, and on his ticket the elector finds a brief statement of it and the amount of the increase, the borough council can not, after the increase is authorized by a popular vote, so cast, divert the money from the purpose for which they, in the first instance, declared it was to be used. In voting for the increase the electors have a right to assume, and vote accordingly, that their representatives will expend the money for the purpose for which they asked it. To permit them to do otherwise would be to permit them to practice fraud and deception upon their trusting constituents, and when an attempt is made by those in authority to so violate faith with the people, they will be halted by a chancellor."

The judgments of the District Court and Court of Civil Appeals are affirmed.