**WRIGHT et al. v. ALLEN et al.   (No. 9095.)***

(Court of Civil Appeals of Texas. Dallas. Dec. 8, 1923. Rehearing Denied Jan. 26, 1924.)

1. **Highways** ⊚≈90—**Pre-election orders submitting bond issue held contract with electorate.**

Where pre-election orders of the commissioners' court, submitting a highway bond issued to the electorate, stated the places, the manner, and the cost of the proposed improvements, these orders must be treated as a contract between the commissioners' court and the electorate.

2. **Highways.** ⊚≈90—**Change in road held substantial compliance with pre-election orders.**

Where a contemplated change shortened the distance between the two termini of a road and avoided two grade railroad crossings, held, that it was a substantial compliance with orders of the commissioners' court ordering an election on the question of issuing bonds and providing that proceeds would be expended in substantial compliance with a certain report of engineers which contemplated changes to ef-

fect saving of mileage, better alignment, and elimination of railroad grade crossings, and there was no abuse of the commissioners' court in authorizing such a change.

3. **Highways** ⊚≈90—**Pre-election orders submitting bond issue held to reserve right to make changes in roads.**

Pre-election orders of the commissioners' court submitting a highway bond issue to the electorate held to reserve the right to make such changes in location of roads as in the judgment of the commissioners' court would be necessary, so long as the work as contemplated would be a substantial compliance with those orders.

4. **Counties** ⊚≈23—**No review of honest exercise of discretion by commissioners' court.**

In the absence of gross abuse, the Court of Civil Appeals held not in a position to interfere with the honest exercise of discretion by the commissioners' court in carrying into effect their pre-election orders submitting a highway bond issue to the electorate.

5. **Highways** ⊚≈130½, New, vol. 12A Key-No. Series—**Suit to enjoin proposed change in road not premature.**

An order of the commissioners' court directing the county auditor to advertise for bids, and the advertisement for bids for the construction of a road, held to show an intent on the part of the commissioners' court to make a change of location, and hence the filing of the suit to enjoin the change was not premature.

6. **Appeal and error** ⊚≈1056(1)—**Witnesses** ⊚≈379(2)—**Defendant's declaration held admissible for purpose of impeachment, but exclusion harmless.**

On a hearing to dissolve a temporary injunction restraining a proposed change in the construction of a road, exclusion of evidence that witness had heard one of the defendants say that a railroad had promised to pay $50,000 to secure the proposed change, and thus eliminate two crossings, held not prejudicial, but on another trial to be admitted for the purpose of impeachment on the issue of undue influence.

7. **Appeal and error** ⊚≈1056(1)—**Highways** ⊚≈130½, New, vol. 12A Key-No. Series—**Evidence that creek overflowed part of proposed highway, change in construction of which is sought to be enjoined, admissible, but exclusion not reversible error.**

On a hearing to dissolve a temporary injunction restraining a proposed change in the construction of a highway, exclusion of evidence that the waters of a creek had overflowed part of the proposed route to a depth of 20 feet held not reversible error, but such evidence should be admitted on the hearing on the merits as bearing on the question of abuse by the county commissioners of the discretion vested in them.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by J. C. Wright and others against Arch C. Allen and others. From a judgment

---

⊚≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 19, 1924.

dissolving a temporary injunction, plaintiffs appeal. Judgment affirmed.

Bailey, Nickels & Bailey, of Dallas, for appellants.

John W. Pope and Claude D. Bell, both of Dallas, for appellees.

VAUGHAN, J. This suit was filed in the court below on the 18th day of May, 1923, appellants thereby seeking equitable relief by writ of injunction alone on the following grounds against certain proceedings and threatened acts and conduct on the part of appellees, viz.: On the 21st day of April, 1919, the commissioners' court, then composed of appellees Arch C. Allen, county judge, J. M. Miller, C. D. Smith, J. W. Slaughter and G. W. Ledbetter, county commissioners of Dallas county, Tex., made an order for road district No. 1, which included all of Dallas county except the territory in levee district No. 1, calling an election for May 24, 1919, for the purpose of determining whether $6,500,000 of bonds of said road district should be issued "for the purpose of constructing, maintaining and operating graveled or paved roads and turnpikes, or in aid thereof." That contemporaneously with and as a part of the order for said election, said commissioners' court adopted the following resolution:

"In order that the taxpayers and voters of Dallas county, and all others interested therein, may understand the attitude and purposes of the commissioners' court of Dallas county, Texas, with reference to the expenditure of the proceeds of six million five hundred thousand dollars ($6,500,000.00), in road bonds to be voted upon at an election to be held in Dallas county on the 24th day of May, 1919, in the event the issue of said bonds is carried: It is ordered, adjudged and decreed by the commissioners' court of Dallas county, Texas, on this 21st day of April, 1919, that in case said proposed bond issue of $6,500,000.00 in road bonds is carried the proceeds thereof will be handled and expended by this court in substantial compliance with the terms of a resolution in this connection by the Dallas County Good Roads Convention on the 12th day of April, 1919, which resolution, among other provisions, adopts and approves in substance a report filed with said convention by J. F. Witt, J. D. Flauntleroy and E. C. Connor, board of engineers, copy of which is now on file with this court, and open to the public inspection."

The "report" referred to in the election order provides for "a plan for a complete road system for Dallas county," the introduction and sections 1, 2, and 3 thereof being as follows:

"In compliance with your instructions to prepare and to submit for your consideration a plan for a complete road system for Dallas county, your board of engineers has been governed by the following determining factors:

"1. The correlation of the principal highways of Dallas county with the trunk lines of the state highway system, with particular reference to the highway development now planned in the counties contiguous to Dallas county. (See accompanying map.)

"2. The development of an intracounty system that with a minimum mileage improved will reach and serve the maximum rural, semirural and urban populations. (See accompanying blueprint.)

"3. The selection in each case of a specific type of pavement best suited to the traffic demands of each highway, taking into consideration all of the economic factors that govern the selection of a road type and utilizing wherever possible all existing road beds. The economic factors that governed these determinations were present traffic, contemplated future traffic, certain increase in tonnage of transportation units, reduction of ten-mile haul cost, reduction of maintenance per ten-mile haul (saving of mileage and betterment of alignment and grades due to new location and elimination wherever possible of railroad and interurban grade crossings.)"

This report consists of four parts, generally, as follows: (1) Preliminary remarks, in which the engineers describe the "determining factors" which caused them to decide upon the "plans" therein set forth; (2) types of construction contemplated, being the road system as recommended by said report filed with the Dallas County Good Roads Convention on the 12th day of April, 1919, by said board of engineers; (3) estimated cost of each of the roads as planned by said report of said engineers; (4) the "blueprint" attached to the report of said engineers showing the location of the various roads recommended in said report, on which map is the following footnote:

"Dallas county shows alignment of roads at present. Improved system contemplates general use of same alignment with corrections where practical."

The road, or part of the road here in question, is not specifically referred to in the preliminary remarks of the report of said engineers, but it is specifically dealt with in each of the other parts of the report. Under the heading, "Types of Construction Contemplated," the road is thus described:

"Concrete Pavement: * * * 3. East Pike: State Highway No. 15. State terminals being Shreveport—El Paso. This highway is in many respects the most important leading into Dallas, deriving this importance from the fact that it gives access to the great truck and fruit-growing section of East Texas. This section is inadequately served by railroad facilities, which makes necessary the provision of a high type of highway that will tend to increase the value to the producer and to decrease the cost to the consumer of the vast amount of perishable products raised in this section. Dallas city limits to Mesquite, 10.1 miles, a 20 ft. concrete pavement. Mesquite to county line, 5.3 miles, an 18 ft. concrete pavement."

Under the title, "Estimated Cost," East Pike State Highway No. 15, being the road around which this litigation centers, is thus referred to:

"East Pike: City limits to Mesquite, 20 ft. concrete, 10.1 miles @ $34,000.00—$347,000.00; Mesquite to county line, 18 ft. concrete, 5.3 miles, @ $31,000.00—$164,300; total—$511,-740.00."

The three and a fraction miles of the East Pike in controversy is included in the 5.3 miles last above referred to, and extends eastwardly from the town of Mesquite. The election resulted in favor of the proposition to issue the bonds. The bonds were duly issued, and a large part had been sold prior to the institution of the suit in the court below.

On the 12th day of June, 1919, the commissioners' court of Dallas county entered an order selecting "as the roads to be first constructed out of the funds derived from the sale of bonds on account of the $6,500,-000 bond issue and in accordance with the plan outlined and approved by the voters of the county on the 24th day of May, 1919; said order selecting and providing for the road in controversy being in part as follows:

"Sec. 3. East Pike State Highway No. 15. In order that the roads as outlined above shall be constructed, it is ordered, adjudged and decreed by this court that the resolution of April 21, 1919, be and the same is hereby adopted by this court; and the said court does hereby adopt the said report and the roads therein specified and designated as the plan of improved highways in and for Dallas county, Texas."

This order then proceeds to set aside and apportion to various roads named in the report various amounts, there being apportioned to the road in controversy the sum of $511,750 of the proceeds of the bonds referred to. Said order providing as to the apportionments made that said funds "shall be and are here applied, set aside and irrevocably apportioned." After naming the different roads to be improved by the proceeds of said bond issue, said order continues as follows:

"The above list of roads and the amount apportioned to each are all as represented in the Good Roads Convention and used in all campaign literature given to the taxpaying voters in the election held May 24th, 1919, and the commissioners' court of Dallas county is hereby bound to carry out the road program as voted. It is therefore ordered by the court that said roads as designated, adopted, and for which said bond moneys were voted, be and the same are hereby named as in said plan of highways heretofore adopted by this court, and the said funds herein set aside shall be and are hereby set aside for the specific roads and to be used on no other road than the one upon which the same is herein apportioned."

On the ―――― day of May, 1923, the commissioners' court of Dallas county entered an order instructing the county auditor of said county to advertise for bids for the construction of 3.03 miles of East Pike road, being part of the road involved in this suit. Said order being as follows:

"It is ordered by the commissioners' court that the county auditor be and he is hereby authorized and instructed to advertise for bids for the construction of that portion of East Pike in District No. 2 from the town of Mesquite eastward for a distance of 3.03 miles. Specifications for same are on file in the office of Nagle, Witt & Rollins, district engineers for Dallas county. Said advertisement to run for a period of two weeks, and the bids to be opened at 10 o'clock a. m. May 28, 1923."

That in compliance with the above order, said county auditor advertised for bids, as follows:

"It is ordered by the commissioners' court that the county auditor be and he is hereby authorized and instructed to advertise for bids for the construction of that portion of East Pike in district No. 2 from the town of Mesquite eastward for a distance of 3.03 miles. Specifications for same are on file in the office of Nagle, Witt & Rollins, district engineers for Dallas county. Said advertisement to run for a period of two weeks, and the bids to be opened at 10 o'clock a. m. May 28, 1923."

The section of the road referred to in the above order and advertisement for bids begins at the east limits of the town of Mesquite and is laid out so as to be exactly parellel with and adjacent to the right of way of the Texas & Pacific Railway, and extends eastwardly from the town of Mesquite 3.03 miles. No road now exists, or has ever existed, on the road described in the advertisement referred to and as described in the specifications referred to in the advertisement.

The change as reflected by the above statement in the East Pike, being State Highway No. 15, as contained in the report of the board of engineers adopted by the commissioners' court on the 21st day of April, 1919, gave rise to the litigation, the result of which is before us for revision.

Appellees seek to enjoin the carrying into execution of the order of the commissioners' court of date on or about May 5, 1923, changing the line of construction of said East Pike between the town of Mesquite and the county line between Dallas county and Kaufman county, Tex., as contemplated by said order of date May 5, 1923. Appellants, in substance, allege that each and all of the appellants own land abutting upon the three and a fraction miles of the road as it now exists and as it has existed for 20 years or more east of Mesquite; that their respective residences and improvements were built near to and fronting upon the road involved in this

suit as the same now exists; that they voted for and worked in favor of the bond issue because they thought, and were by the report, orders, maps, etc., described above, led to believe, that this part of the road was included in the change as contemplated by the commissioners' court as per the order advertising for bids and would be paved; that if this part of the road is abandoned, or so treated as that it will not be first class, the value of their lands and improvements will be materially decreased; that appellant Wright worked and voted for the bond issue because he thought this part of the road was to be paved and, after the election, he bought 20 acres upon the road as the same then existed and placed substantial improvements upon it because of that understanding; and further alleged that appellees, acting primarily at the instance of appellee Miller and not in the exercise or purported exercise of their own independent judgment and discretion, or otherwise, but in violation of the law and contrary to good conscience, and in disregard of the aforesaid representations, orders, and promises of the commissioners' court of Dallas county and the members thereof, have agreed and threatened and propose substantially to change the course and location of said East Pike road and practically the three and a fraction miles thereof in controversy, and to relocate said section of the road so as to leave appellants and each of them and their tenants or agents without any reasonable opportunity to use said East Pike road so improved and maintained as contemplated in the issuance of said bonds, and particularly said section thereof contemplated to be changed by the order of said commissioners' court directing the county auditor to advertise for bids of date May 5, 1923, and thus prevent appellants from receiving the benefits to which they are entitled from the improvement and maintenance of said road through the expenditure of a portion of said bonds, and so as to substantially injure their properties aforesaid and to decrease the value thereof, and to interfere with and retard the proper use of said properties and improvements, and that said change being made in the construction of said road would not leave the dwelling houses and other improvements of the appellants located upon or conveniently accessible to said East Pike road, and that, in the making of such agreement and proposed performance of same, the appellees wrongfully and unlawfully, and in breach of faith, have agreed and proposed and threatened to use a large and substantial sum (more than $50,000) of the proceeds of said bond issue in the construction of the contemplated change in said East Pike road as shown by the advertisements for bids, and thereby to deprive appellants and others interested of the right to have such proceeds,

or any part thereof, expended and used upon said original section of said road, and that thereby appellees propose and threaten wrongfully and unlawfully to divert such funds from their proper use; that, pursuant to such agreement and proposal, the commissioners' court advertised, or caused to be advertised, for bids to be received by the county auditor until Monday, May 28, 1923, for the construction of the aforesaid relocated portion of said East Pike road according to specifications on file with Nagle, Witt & Rollins, Engineers, Court House, Dallas, Tex., and that, unless the relief prayed for should be granted, the commissioners' court would receive and consider such bids and accept some such bid, and thereupon undertake to enter into a binding contract for such purpose.

Appellants further allege that the East Pike road as shown in the report and blueprint map above referred to was one of the four cardinal roads of the county called "radial" in the report, and was such road for more than 20 years last past; that by section 9 of chapter 57, Special Acts of the 34th Legislature, regular session, effective March 22, 1915, to July 22, 1919, and by section 9 of chapter 63, Special Acts of the 36th Legislature, second called session, effective July 22, 1919, and still in force, it was and is provided with respect to the cardinal roads of the county of Dallas as follows:

"The four roads, each beginning at the corporate limits of the city of Dallas, and extending in the general directions of north, south, east and west, respectively, to the county lines heretofore designated as cardinal first-class roads and the four intermediate roads likewise leading from the corporate limits of said city of Dallas through various portions of the county to the county lines, and lying, respectively, between two of said cardinal roads, shall be and are hereby designated as such first-class cardinal and intermediate roads, and it shall be the duty of said commissioners' court to improve, repair and permanently maintain roadways and bridges over and on said cardinal and intermediate roads, which shall be first-class in every respect, and which roadways shall be thoroughly graded and drained and of such material and construction as may by said court from time to time be deemed most suitable and appropriate for such use, with the view of making such roadways and bridges as permanent as practicable."

Appellants further allege that by adoption of the engineer's report above referred to, and the orders based upon the same and providing for the election and the apportionment of the proceeds of the bond issue, the commissioners' court decided, adjudged, and decreed that, in order for the said East Pike road, including the section involved, to be constructed and maintained as required by said statutory provision, it was necessary that the same should be constructed and maintained of the material, etc., as provided

for in said report and orders based thereon and in reference thereto, and that by reason of the premises it was the duty of the commissioners' court so to construct and maintain the road; and appellants prayed for the issuance of a temporary writ of injunction restraining the appellees from entering into or making any contract, or contracts, or other arrangements with any contractor, or other person, in which appellees might undertake to obligate said road district or said court, or said county, to expend or pay or incur liability for the payment of any portion of the public funds of said county, or of said road district, for or in connection with the opening or preparation for the opening of said new road or proposed relocated section of said East Pike road, or for or in connection with the acquisition of a right of way therefor, or the grading, construction, and maintenance of such new road, and from entering upon or attempting to enter upon any portion of the lands of appellants for such purpose, or otherwise, pending final hearing of the cause or the further orders to be made in the premises, and, further, that upon final hearing, they have judgment perpetuating the temporary writ of injunction as granted.

Upon the filing and presentation of appellants' petition, the trial court entered a temporary injunction order as prayed for, and set the cause for hearing for May 26, 1923. On said date appellees filed their answer, substantially as follows: Denying that section 9 of special statute alleged by appellants applied in the voting and expenditures of the bond issue; averring the adoption of the report of the engineers and Good Roads Convention referred to above; specially pleading section 3 thereof above quoted; alleging that such report from the time it was filed and adopted by the commissioners' court remained on file, open to public inspection up to the date of the bond election, and gave the voters at such election notice thereof, and that said section 3 of such report reserved to the commissioners' court "the right to construct said road looking to a reduction of ten-mile haul cost, reduction of maintenance per ten-mile haul, saving of mileage, betterment of alignment and grades due to the location and the elimination wherever possible of railroad and interurban grade crossings," and, under such reservation, the commissioners' court had the right to use the proceeds of such bond issue to make better alignments and make corrections in said road; denying that the portion of the road in controversy was any part of any original cardinal road in Dallas county as established by the commissioners' court; and alleging that sections 8 to 11 of the special road law relied upon by appellants above referred to gave the commissioners' court power to occupy land for the purpose of opening, straightening, short-

ening, etc., any public road of the county; and further denied that there was any intention on the part of the commissioners' court to abandon any part of the section of the East Pike road involved in this litigation, and alleging that all parts of the section of said East Pike road involved in this litigation would be from time to time, as provided for under section 9 of the special road law above referred to, maintained as a first-class road in every respect.

Appellees further alleged that if the court should reach the conclusion that any part of the Dallas county road law, being an amended act of the Legislature of 1919, amending an act known as Dallas County Road Law of 1905, and now being known as chapter 63, amending chapter 57, should apply to the then commissioners' court in the expenditure of said bond money upon said roads, that, under section 8 thereof, appellees would show to the court that the power is there granted to the commissioners' court of Dallas county, Tex., in substance as follows:

"The court may, from time to time, alter such classifications and change distances thereof on such roads as it may see fit."

And under section 9 of said act the following provision is made:

"That such other first class road or roads shall each then connect with one or more of such cardinal or intermediate road. In designating such or additional roads said court shall * * * consider and shall be governed by the volume of population to be accommodated, and donations of money, labor and materials which may be offered by citizens and property owners therefor, keeping constantly in view the purpose of this act, which is to give to the people of said county a complete and connecting system of permanent roads and bridges."

And that under section 11 of said Dallas county road law the right and power is there granted to the commissioners' court to occupy any land for the purpose of opening, widening, straightening, draining, grading, constructing, building, improving, repairing, or mantaining any public road of said county, or any part thereof, and, further confers the right of condemnation thereunder; also the option upon the commissioners' court of Dallas county, Tex., either to act under the provisions of the general laws of the state or under the provisions of said Dallas county road law.

Appellees further alleged, in substance, that in the event said road involved in this litigation should be constructed on a straight line that it would have the effect of a better alignment, shortening of distance and the elimination of two dangerous interurban grade crossings, which would be beneficial to the present and future traffic and would facilitate the transportation of tonnage and result as an important economic factor in the future use and maintenance of said East

Pike generally, and alleging that this right and power is conferred upon, or rather rests in, the appellees, commissioners' court, by virtue of the pre-election orders and pre-election notices made and issued in connection with the submission of the bond issue to the voters on the 24th day of May, 1919, herein adverted to, and that thereby the commissioners' court of Dallas county reserved to itself the legal right to exercise the discretion vested in it by law to make better alignments of roads and grades due to new location and the elimination wherever possible of railroad and interurban grade crossings, for the purpose of producing a more economic factor in the present and future traffic and for the purpose of reducing transportation units in what is known as a ten-mile haul, and, further, that the contemplated change in the construction of the road involved would in all respects be a substantial compliance with the report of said engineers so adopted by the commissioners' court in so far as same related to the road and the change proposed to be made therein.

Appellees further alleged that, for the reasons above set out, the appellants were not entitled to the relief by injunction as prayed for.

On May 26, 1923, the trial court heard the motion to dissolve the temporary writ of injunction theretofore granted, together with the application of the appellants for continuance of same in force pending the litigation, which resulted in the temporary writ of injunction being dissolved and appellants denied the relief prayed for; to which judgment and decree the appellants duly excepted and gave notice of appeal. Whereupon, the trial court suspended the order dissolving the temporary writ of injunction and permitted appellants to file a supersedeas bond in the sum of $20,000 to that effect, and provided for the keeping in effect the order of May 18, 1923, pending final disposition of this cause on appeal. Said bond was duly executed, filed, and approved on May 28, 1923, and this cause is now before us for review and revision on a number of assignments of error. However, under the view we take of this appeal, it will not be necessary to discuss all of said assignments or propositions presented by appellants assailing the correctness of the interlocutory judgment appealed from.

In addition to the record facts established as above set forth, the following material facts were established by oral testimony: Appellants each own land in the vicinity of the road as the same now exists, which would be adversely affected by the contemplated change in the road involved to the extent that the lands owned by them, respectively, would not be directly accessible to that portion of the road included within said proposed change in the old road as same existed prior to said bond election; that appellants were qualified electors in said bond election, and each voted for the issuance of said bonds; that each appellant knew of the pre-election orders entered in reference to said election and were influenced thereby in supporting said bond issue by their respective votes, and otherwise using their influence in the interest of the success of same; that in voting for said bond issue each appellant believed that the road would be constructed along the route of travel of the old then existing road and out of the material and according to the plans and specifications set forth in the report of the civil engineers adopted by the commissioners' court April 21, 1919; that the saving in distance would be .69 of a mile if the proposed change in the original plans for the construction of the road should be adopted and carried out, and that said proposed change would occupy about 2,000 feet of the bed of Mesquite creek; that said realignment was made for the purpose of shortening the distance and avoiding two grade crossings; that, in order to place said road as contemplated to be constructed in the bed of said creek above the high-water mark, the engineers estimated that the embankment for said road would have to be constructed to an elevation of $17\frac{1}{2}$ feet above the surface of the creek.

[1] The pre-election orders entered by the commissioners' court of Dallas county in reference to said bond election must be treated as a contract between the commissioners' court and the electorate entitled to vote at said election; not that the commissioners composing said court did not have the right to use their discretion vested in them by law in reference to the place of construction, the manner of construction and the cost thereof, but that they had exercised it in the making of said orders, and, the election having been held in pursuance thereof, the electors thereat, being vitally interested not only in the voting for the issuance of the bonds but in the construction of the road system, are entitled to be protected in the carrying out of the contract thus made in the form of the orders entered. Black v. Strength, 112 Tex. 188, 246 S. W. 79; Moore v. Coffman et al., 109 Tex. 93, 200 S. W. 374; Scott v. Forrest, 174 Ky. 672, 192 S. W. 693.

[2] It is contended on the part of appellees that the pre-election order of April 21, 1919, by its terms, only provided that the report of the civil engineers dealing with the plan and specification and location of the road system to be constructed by means of said bond issue would be "substantially" built and constructed in accordance with said report; that the proposed change which gave rise to this litigation would be in all respects the carrying out of said "contract," in that the road as thus constructed, embracing this proposed change in the plans and location thereof, would be a substantial compliance with said

contract. This proposition has demanded and received a great deal of careful consideration at the hands of this court, and, after examining many authorities (not necessary here to be cited), we have reached the conclusion that appellees' contention in this respect must be sustained. Stuckey et al. v. Jones, County Judge, et al., 240 S. W. 565.

This holding is not in conflict with the law .as announced in the case of Moore, County Judge, v. Coffman, 109 Tex. 93, 200 S. W. 374. In that case there was no reservation in reference to the right to change in any respect the location of the bridge as fixed in the pre-election order or the right retained to only carry out the terms of the election order in a substantial manner, and, as the commissioners' court in the Moore-Kaufman Case had specifically fixed the particular location on the Brazos river at which the two bridges should be constructed with the proceeds arising from the bond issue, to wit, the Brock crossing and the Bill Kaufman crossing, therefore, in the absence of a reservation in the pre-election order and notices, no right existed in the commissioners' court to exercise any further discretion, having already exercised to the fullest extent and in a specific way the discretion with which the law clothed the members of said court. Further, the proposed change in the location of the bridges would not have been a substantial compliance with the pre-election order fixing the location of same.

The instant case is altogether different, in that the following language found in section 3 of the engineer's report, adopted by the commissioners' court April 21, 1919, to wit: "The economic factors that govern the determination were present traffic, contemplated future traffic, certain increase in tonnage of transportation units, reduction of ten-mile cost, reduction of maintenance for ten-mile haul, saving of mileage and betterment of alignment and grades due to a new location, and the elimination wherever possible of railroad and interurban grade crossings," and the following note on the map accompanying and a part of said report: "Dallas county shows alignment of roads at present. Improved system contemplates general use of same alignment with correction where practical," given the effect and meaning that the language employed dictates, reserves to the commissioners' court the power and authority to make changes in the alignment where, in the judgment of said court and in the exercise of its discretion, corrections are practical and where it would be a saving of mileage and betterment of alignment and grades due to new location, and where such change would eliminate railroad or interurban grade crossings. It is very apparent from the uncontradicted evidence that the contemplated change in the nature of a realignment would not only shorten the distance between the two given points, Dallas county line and Mesquite, but would avoid two grade crossings.

[3, 4] Furthermore, we must hold that the right was reserved by the language of the pre-election order to make such changes as in the judgment of the commissioners' court would be necessary, so long as the work as completed under said contract would be a substantial compliance therewith. If we were left free under the law to invade the discretion with which appellees, composing the commissioners' court, are clothed under the law, we might reach a different conclusion with reference to the advisability of making the change; but the electorate of Dallas county, acting under the provisions of the law, selected, as the servants to act for them in the matters with which said court under the law is authorized to deal, the members thereof, and, in so doing to exercise the discretion recognized to be essential to be left free and untrammeled in order that the officers thus selected may discharge according to their honest judgment and discretion the duties of the office held by them; therefore, unless a gross abuse of such discretion has been shown, this court is not in position to disturb the honest discretion so exercised, for, to do so would be assuming to act as commissioners in lieu of the duly qualified and elected officers selected by the voters to represent them in that capacity. Therefore it is not what the members of this court would do if left free to exercise their discretion in treating with the proposed change, but what this court has authority to do under the law must be our guide in reaching a conclusion upon this proposition.

[5] We hold that the facts fail to show such a gross abuse of discretion as to justify this court to interfere with the proposed change as contemplated by the order directing the county auditor to advertise for bids as above set out. However, we do hold that public officials must be held to intend that their acts and conduct with reference to those matters with which the law clothes them with authority to act were made in good faith and intended to be carried out as indicated by the orders entered in reference thereto. Therefore we hold that the order of the commissioners' court directing the county auditor to advertise for bids for May 28, 1923, and the advertisement for bids as made by said county auditor, were acts indicating a purpose and intent on the part of said commissioners' court to make the change in the construction of the road under investigation as indicated in said order and advertisement for bids. Therefore the filing of the suit as contended on the part of appellees to have been premature cannot be sustained.

[6] Appellants complain of the action of the court in excluding the following testimony of the witness J. O. Wright, that he (Wright) had heard the appellee J. T. Miller,

county commissioner of Dallas county for the precinct in which the road in controversy is located, say in the winter of 1922–23, that he or the commissioners' court had a contract or arrangement with the company which operates the line of interurban railway which crosses the road in controversy in this suit, under which contract said company was to pay the sum of $50,000 if the road in controversy in this suit should be so changed as that it would not cross said line of interurban railroad; said statement not having been made in the meeting of the commissioners' court. The only objection made to the introduction of said testimony by appellees was, "We object to that," no specific objection of any character being pointed out. The objection as made was really not sufficient to justify the court to exclude said evidence, as the grounds of the objection should have been clearly indicated showing that it was not admissible for any purpose in the condition of the case as then developed. An objection that the evidence was hearsay, therefore not admissible as original testimony, but only, at best, admissible for the purpose of impeaching after a proper predicate had been laid, should have been sustained. However, if error, same was immaterial as, had the testimony excluded been admitted, the trial court could have properly refused to have given same any probative effect as original evidence sufficient to establish the fact in reference to which same was offered. And further, with the rejected evidence before the court, same would not necessarily have had the effect to change the result, as there still would have been sufficient evidence as revealed by the record to have authorized the order entered on the motion to dissolve. In view of another trial, we deem it advisable to say that such evidence, if offered from the proper source, should be received upon the issue of undue influence, etc., as presented by appellants' pleadings.

[7] On objection the court excluded the following testimony offered by appellants through their witness Frank R. Lewis: Said witness testified that he had surveyed the ground along the section of the road in controversy in this suit, and also along the route of the alleged proposed new road, and from such surveys had prepared a map showing the route of the two roads, and each map contains various lines and notes intended to show the action of the waters of Mesquite creek in overflow in the vicinity of the place where the creek crosses the line of the alleged proposed new road, which map was introduced and admitted in evidence; whereupon appellants propose to show by said witness, in connection with said map, what ground and what quantity of ground in the immediate vicinity of the place where said creek crosses the route of the proposed new road has been overflowed by the waters of said creek, and to what depth such grounds were so overflowed during the year 1922 and other times, and thus to explain the meaning and significance of the lines on said map in said neighborhood, the map itself not explaining such meaning and significance. If the objection had not been sustained, said witness would have testified that the ground in the vicinity of the place where said creek crosses the route of the alleged proposed new road has been by the waters of said creek overflowed to a depth of 20 feet or more for several hundred feet in each direction along the route of such alleged proposed new road. This evidence was objected to by appellees on the ground that it had not been shown that the commissioners' court of Dallas county had passed any order to build such new road and that to go into such evidence would be an attempt upon the part of the trial court to inquire into the discretion and judgment of the commissioners' court of Dallas county upon a thing where there was no evidence to show that the court had adopted any such proposed road. This evidence on the trial of the merits of this case should be admitted on the issue as to whether or not in making the proposed change the commissioners' court had, under all the facts surrounding the construction of said road as proposed in the order of date April 21, 1919, and the proposed change as per order of date May 5, 1923, so grossly abused its discretion as to render said order unenforceable and in violation of the contract evidenced by the pre-election order of date April 21, 1919.

The refusal to admit the evidence on the hearing to dissolve the temporary writ of injunction is not such error as would justify a reversal of said order, in that the answer of appellees swore away the equities of appellants' bill for relief as sought by temporary injunction.

The election for the issuance of said bonds was held under the provisions of articles 627 to 641, inclusive, of chapter 2, tit. 18, Revised Statutes of 1911, and as amended by chapter 203, Acts of 1917, and the bonds were not issued under the Dallas county special road law but under the general statutes of the state of Texas providing for the issuance of bonds for the construction, maintenance, etc., of public roads.

We have carefully considered the other propositions raised by appellants, and, in view of the fact that in our judgment the result reached on the discussion of those of prime importance must result in the judgment of the court below being affirmed, we therefore do not deem it necessary to discuss the remaining assignments, but each is hereby overruled.

The judgment of the court below is affirmed.