**NEWMAN et al. v. BIGGS, Judge, et al.**
No. 2467.

Court of Civil Appeals of Texas. Beaumont.
Feb. 8, 1934.

Howth, Adams & Hart, of Beaumont, and Hightower & Daniels, of Liberty, for appellants.

C. B. Cain and P. C. Matthews, both of Liberty, for appellee.

WALKER, Chief Justice.

The interstate highway running from Shreveport, La., to Houston, Tex., designated in Texas as State Highway No. 35, enters Liberty county on the north from San Jacinto county, crosses Liberty county the distance of 11½ miles, passing through the town of Cleveland, and from Liberty county enters Montgomery county on the south. On October 1, 1929, pursuant to an election ordered by the commissioners' court of Liberty county, funds in the sum of $108,000 were voted to pave this road with concrete from the San Jacinto county line to the Montgomery county line. In the petition and order of election the road was described as follows: "In Commissioners' Precinct No. 3 State Highway No. 35, San Jacinto to Montgomery County Line, concrete 11.5 miles—$108,000.00." At the time this election was ordered, State Highway No. 35 had been in existence for many years, as then located since 1920, well marked and defined upon the ground, marked with highway markers under the direction of the highway department of the state, and from time to time had been improved by the expenditure of county funds by Liberty county and funds allocated by the state highway department. After the election the officers responsible for improving Highway No. 35 through Liberty county paved the road with concrete from the San Jacinto county line south to the city limits of the town of Cleveland on the north and from the Montgomery county line north to the city limits of the town of Cleveland on the south, leaving unpaved 2½ miles of the road from city limit to city limit through the town of Cleveland. The following description of Highway 35 through the town of Cleveland, as it existed upon the ground when the election was ordered, is taken from appellants' brief: "As one entered the town of Cleveland at the city limits on the north side, traveling along Highway No. 35, as it existed at the time of the election, he would travel a distance of approximately 5950 feet, at which

point the road turned at right angles west one block, then at right angles south for 2150 feet, thence at right angles east for one block, thence at right angles south, from which point the road proceeded in a straight line 4750 feet to the south city limits of the town of Cleveland. With the exception of the deviation above described within the limits of the town of Cleveland the highway paralleled the route of the H. E. & W. T. Railway the entire distance of 11.5 miles through Liberty County." The road has not been paved through the town of Cleveland because the citizens of the town could not agree upon its location through the town limits. To meet this condition a mass meeting of the citizens was called to decide upon a proper location. The meeting was held pursuant to the call, and the citizens present unanimously agreed upon the following location for the paved road; description taken from appellants' brief: "One entering the City of Cleveland from the north, traveling to the south along Highway No. 35, would travel a distance of approximately 2600 feet from the city limits, at which point the road would make a 2 deg. curve to the right, from that point one would travel approximately 1750 feet, at which point the road would make another 2 deg. curve to the left, and from that point one would travel approximately 1700 feet, at which point the new route would coincide with the old route for a distance of 2150 feet, at which point the new route would again leave the old route and proceed south approximately 600 feet more, at which point the road would again make a 2 deg. curve to the left, and from that point one would travel about 1700 feet, at which point the road again would make a 2 deg. curve to the right, at which point it would join the old route, and from that point one would travel 1450 feet to the end of the concrete pavement already constructed, which was some distance to the north of the south city limits of the City of Cleveland." This description will be hereinafter referred to as the "new location." At no point would the new location be further than 300 feet from the road as it existed when the election was called. The new location would eliminate the four right-angle turns in the old road as it runs through the town of Cleveland and, except for the small 2-degree curves, would run in practically a straight line through the town. The county owns the right of way for the road as it is now located and some of the citizens owning land adjacent to the road have given or agreed to give an additional strip 10 feet wide. On the new location the county would be compelled to acquire a new right of way where it departs from the old road. Part of this right of way has been secured, with deeds held in escrow, but part will have to be secured by condemnation proceedings. The new location would require one citizen to move his residence, which cost more than $10,000 when built a few years ago. For securing right of way Liberty county has available $38,000, unexpended from the bond issue. The cost of the right of way is all the expense that Liberty county would incur in the construction of the road through the town of Cleveland. While the present location does not run through the main business section of the town, about thirty-five small business establishments have been erected adjacent to it—filling stations, restaurants, etc. All of these except about six would be left off the new location. This would probably result in their destruction.

This suit was brought by J. N. Newman and thirty-eight other property holders of Liberty county, against the county judge and the other members of the commissioners' court, to enjoin the construction of the road upon the new location. For grounds of relief they pleaded the facts substantially as stated above. The answer of defendants was, in substance, that the new location was a substantial compliance with the election orders, and that it was their purpose to construct the road upon the new location. On hearing, the district court refused the injunction. From that order the plaintiffs have prosecuted their appeal to this court.

The following additional facts were developed upon the hearing: About 50 per cent. of the business men on the present location were plaintiffs in this suit; the others were not complaining of the new location. The other plaintiffs did not own property on either the old or new location. There was no showing as to the vote on the bond issue, but all the plaintiffs herein voted for the bond issue, and it is reasonable to conclude that they would not have voted for it had they known the old location was to be changed. Mr. G. A. Brashear, division state highway engineer in charge of the construction of this road, testified that the highway department would not consider paving the road through the town of Cleveland on its present location "if there is any other route available." We quote as follows from his question and answer testimony:

"Q. Why? A. In the first place, on account of the danger or hazard of four right angle curves or turns, and second, for the reason

that it is about six or seven hundred feet—increases the feet about six or seven hundred feet.

"Q. Mr. Brashear, what would be the approximate saving on the new proposed route as compared with the old route? A. It would be approximately $5,000, in the neighborhood of $5,000 cheaper on the proposed route than to follow the old route.

"Q. The new route, as we will term it, would be a shorter route than the old route? A. Yes, sir.

"Q. I don't know whether you figured that or not, but I will ask you the question: Do you know approximately how much shorter? A. It would be in the neighborhood of one-tenth of a mile—a little better, say about twelve-hundredths of a mile.

"Q. Being familiar with the present rules and regulations of the State Highway Department as well as that of the Federal Highway Department, I will ask you this question: Even though Liberty County refused to purchase right-of-way over the new route, would the Federal and State Highway Departments go ahead and construct that road over the old route? A. I don't think they would.

"Q. Mr. Brashear, does the Highway Department now stand ready and willing to complete that approximately two miles in there to connect up that highway as, if and when the county provides the right-of-way? A. I am quite sure they would make the appropriation and let the contract as soon as it could be done and the right-of-way is secured."

Noble Garvey testified that he was one of the citizen committee selected by the commissioners' court of Liberty county, to work with it in the expenditures of the proceeds of the sale of bonds voted at the election of 1929, and that after the bond election, the question of relocation of route through the town of Cleveland became a much disputed issue among the citizens of the town. We quote as follows from his testimony:

"Q. I will ask you to state if you were present at the citizens mass meeting up there with reference to the change of the route—location of the route through the town of Cleveland? A. I was.

"Q. You heard Mr. Anderson testify? A. Yes, sir.

"Q. Did they unanimously adopt at that mass meeting the route as indicated here on the map (the new location)? A. Yes, sir.

"Q. I believe you and few plaintiffs in this suit contended for a straight route down the railroad? A. Yes, sir.

"Q. Why did you give up the fight? A. Well, the majority of the people were in favor of the other route and I thought best to get a road through town. If we couldn't get together, they would possibly go around there.

"Q. And that is why you came over to Ocie Anderson and others so as to have it on this route?"

County Commissioner Mr. Tom Minnock testified:

"Q. Is the court, heretofore and now, unanimously as a Commissioners' Court, endeavoring to meet the demands of the Highway Department in order to get that road completed? A. Yes, sir.

"Q. Is is your attitude, or the attitude of the Commissioners' Court, to hurt any individual citizens in Cleveland by adopting this proposed change, as indicated by the blue mark on the map (the new location)? A. No, sir.

"Q. As an official and member of the Commissioners' Court, is it your honest opinion and judgment that this is the most practical route through the town of Cleveland, as indicated by the blue line there? A. Yes, sir; that is the most practicable route in my opinion, and I thought that was the opinion of the majority of the people of Cleveland at the time we had that meeting.

"Q. Has the court, heretofore and now, felt that road should be straightened out for the purpose of avoiding those two abrupt curves there? A. Yes, sir.

"Q. And have you as a member of the Commissioners' Court, heretofore and now, endeavored all the way through to complete that highway up there at as little cost as possible? A. Yes, sir.

"Q. And have you as a member of the Commissioners' Court, heretofore and now, and is that the attitude of the Commissioners' Court as you understand it to be, that they are endeavoring to substantially comply with the pre-election petitions and bond orders relative to the proceeds derived from this bond issue? A. Yes, sir.

"Q. And you feel like you are doing it? A. Yes, sir.

"Q. And do you feel that the minor deviation here from the old route is such that it amounts to not substantially complying with that order? A. I don't think the court feels that they are deviating from that original route. Taking the route in general, I think the court figures that they are complying

as near as possible with the route of Highway 35.

"Q. Complying with the pre-election order? A. Yes, sir.

"Q. At the same time isn't it wanting to comply with the commands of the State and Federal Government Engineers with reference to the location on that map? A. Yes, sir."

Commissioners Jackson and Turner gave substantially the same testimony, as did also Commissioner Kelly. We quote as follows from Mr. Kelly's testimony:

"A. Well, I felt like this. I am going to express my opinion on this route just the same as I would any other route. In the viewpoint of this new route here, I feel like from the viewpoint of the State spending approximately 75 per cent of the money on this State Highway, they ought to be allowed to locate that road.

"Q. That is one of the things that prompts you? A. Yes, sir, that is one of the things.

"Q. What other things prompted you in your action? A. I feel like in this relocation, those abrupt turns is a dangerous point, and to my mind it will be better for the majority, for the general public that travel and the people as a whole.

"Q. Now, being a Commissioner, and being one of the members of the court for that proposed change, do you feel like you are substantially complying with the pre-election petition and bond and order with reference to this county wide bond issue and expenditure of this money? A. I do. I feel like we are spending the money to the best advantage for the majority of the people as a whole.

"Q. And at the same time substantially complying with that order? A. Yes, sir."

Mr. Ocie Anderson, who presided at the mass meeting referred to above, testified that many of the plaintiffs herein were present at that meeting, and that the vote was unanimously in favor of the new location, and that "eighty to ninety per. cent" of the citizenship of Cleveland favored the new location.

### Opinion.

The parties to this suit are in agreement upon the fundamental principles of law controlling its disposition. In ordering an election for the construction of a public road, the commissioners' court has the power to prescribe in the election order the location on the ground of the proposed road. Moore v. Coffman, 109 Tex. 93, 200 S. W. 374. When only the control points of the road are named in the election order and nothing is said therein as to the location of the road between the control points, the commissioners' court may locate the road according to its discretion; but when the road to be improved is specifically designated upon the ground by a particular description given in the election order, then, as a general proposition, the commissioners' court must construct the road in substantial compliance with the location as thus designated and it has discretion to make only such changes as would not amount to a material or substantial change from the route designated in the election order. Wright v. Allen (Tex. Civ. App.) 257 S. W. 980, 985; Fletcher v. Howard, 120 Tex. 298, 39 S.W.(2d) 32, 40 S.W.(2d) 52; Fletcher v. Ely (Tex. Civ. App.) 53 S.W.(2d) 817, 821; Heathman v. Singletary (Tex. Com. App.) 12 S.W. (2d) 150; Brown v. Preston County Court, 78 W. Va. 644, 90 S. E. 166. The designation of a road by its highway number, where it is located on the ground, operated and maintained by that number, is a sufficient description to require the commissioners' court, in constructing the new road, to conform to the location of the old road. Fletcher v. Ely, supra. These conclusions rest upon the proposition that such pre-election orders constitute a contract between the voters and the commissioners' court, controlled by the general principles of the law of contracts. Wright v. Allen, supra; Fletcher v. Ely, supra. When the road has been designated in its entire length by the election order, the proceeds of the bonds therein voted are "earmarked" as a trust fund for the improvement of the road thus designated, and the courts have power to enjoin the diversion of this fund to any other project. Quisenberry v. Mitchell, 116 Tex. 378, 292 S. W. 160; Black v. Strength, 112 Tex. 188, 246 S. W. 79; Fletcher v. Ely, supra; Roane County Court v. O'Brien, 95 W. Va. 32, 122 S. E. 352; 19 R. C. L. 1163. Except for gross negligence, an injunction is not available against the commissioners' court in matters within its discretion. Stuckey v. Jones (Tex. Civ. App.) 240 S. W. 565; Wright v. Allen, supra. In recognition of these principles of law appellants say: "That the only question for decision in this case is as to whether the deviation proposed by the Commissioners' Court of Liberty County was such a material and substantial change from the route of Highway 35 as to constitute a breach by the Commissioners' Court of its contract with the voters of Liberty County with reference to the purpose for which the proceeds of the bond issue were to be spent."

As said in Fletcher v. Ely, supra, "it is difficult to find precedence for the construction of a given contract." Yet wei believe the following authorities are almost on all fours in support of the judgment of the lower courti refusing the injunction:

In Mosel v. Real (Tex. Civ. App.) 49 S.W. (2d) 475, 476, the road to be improved was designated in the election orders. The new road did not conform throughout its entire length with the old road, as designated in the election orders, but departed therefrom along its route at various places as much as half a mile. We quote as follows from the opinion of the court on the facts: "The roadway was straightened, the survey between the two towns was shortened by a half mile, that is to say, from 7.750 miles to 7.234 miles, and the roadway was moved farther away from the Guadalupe river bed, which the existing route closely followed." Answering the propositions that the election orders describing the road to be improved as Highway 27 constituted a contract, and that the proposed changes from Highway 27 would breach the contract and should, therefore, be restrained, the court said:

"We are of the opinion that the judgment should be affirmed. We are of the opinion that the language in the election orders providing that the bond money be expended 'on designated State Highway No. 27' cannot reasonably be construed into a stipulation that the location of the roadway be maintained on the ground as it then existed, with all the imperfections and impracticalities that marked the location and construction of our highways in earlier years. We are of the opinion, rather, that the terms of the order, when rationally construed according to the plain language used and in the light of the history and progress of highway improvement in this state, amounted to a simple provision that that highway designated as a constituent part of the state highway system, should be constructed and improved between the designated control points, Kerrville and Ingram, along the most practical route best designed to secure the safety and convenience of the traveling public, to be determined by the skilled agencies of the government appointed to that work.

"The great public highways of the state, such as this, are presumed to be located, constructed, and maintained for the benefit of the general public, and not for the special enhancement of the property of occasional landowners in the communities traversed by those highways. The so-called contract in question was no more than a mandate to the county commissioners to appropriate the bond money for the purpose of so locating and constructing designated state highway 27. The record warrants the implied finding of the trial court that the commissioners properly performed their obligation under the terms of that contract."

In Wright v. Allen, supra, the contention was made that the proposed change would affect injuriously appellants' business; that they voted for the bonds believing that the road would be located as described in the election order; that case being thus on all fours with this case on these issues. As to the facts on these issues, we quote as follows from the opinion of the court: "Appellants each own land in the vicinity of the road as the same now exists, which would be adversely affected by the contemplated change in the road involved to the extent that the lands owned by them, respectively, would not be directly accessible to that portion of the road included within said proposed change in the old road as same existed prior to said bond election; that appellants were qualified electors in said bond election, and each voted for the issuance of said bonds; that each appellant knew of the pre-election orders entered in reference to said election and were influenced thereby in supporting said bond issue by their respective votes, and otherwise using their influence in the interest of the success of same; that in voting for said bond issue each appellant believed that the road would be constructed along the route of travel of the old then existing road and out of the material and according to the plans and specifications set forth in the report of the civil engineers adopted by the commissioners' court April 21, 1919; that the saving in distance would be .69 of a mile if the proposed change in the original plans for the construction of the road should be adopted and carried out, and that said proposed change would occupy about 2,000 feet of the bed of Mesquite creek." The Court of Civil Appeals affirmed the judgment of the lower court refusing to enjoin the commissioners' court from making the proposed changes.

Fletcher v. Ely, supra, is the principal case relied on by appellants. The facts of that case differ materially from the facts of this case. The highway there involved was 27 miles in length. Highway No. 5, as originally laid out and maintained, passed through the town of Childress. The proposed route missed entirely the town of Childress, and nowhere touched the old highway, and varied from a few yards therefrom to an average of 2 miles. On such facts it was held that

the proposed route was not a substantial compliance with the pre-election orders of the commissioners' court. We think the court correctly construed the facts of that case. In granting the injunction, however, the court recognized the proposition that in constructing the road the commissioners' court was held only to a substantial and not a literal compliance with the terms and conditions of the election order. It was there said: "The law does not require a literal performance, but there must be left to the parties substantially the benefits expected. If the changes have not materially detracted from these benefits, there has been a substantial compliance. Mo. P. R. Co. v. Tygard, 84 Mo. 263, 54 Am. Rep. 97; St. L., M. & S. E. R. Co. v. Houck, 120 Mo. App. 634, 97 S. W. 963. It is difficult to find precedents for the construction of a given contract, as each one turns on the meaning of its own language and the circumstances under which it was made. For a further discussion of this question, see Crow v. Clay County, 196 Mo. 234, 95 S. W. 369; Tobey v. Moore, 130 Mass. 448; Rothenberger v. Glick, 22 Ind. App. 288, 52 N. E. 811; Soohan v. Philadelphia, 33 Pa. 9."

For the reasons stated we think the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.