### HUGGINS v. VADEN, County Judge.
### (No. 10602.)

(Court of Civil Appeals of Texas. Fort Worth. June 9, 1923. Rehearing Denied June 30, 1923.)

1. **Highways ⟊90—Road bond election refused, proposed territory overlapping territory of another proposed district.**

   Where two petitions were filed for the establishing of a road district, under Rev. St. 1911, art. 628, and the commissioners' court granted the petition which was filed first and ordered an election, that court did not abuse its discretion by denying the second petition, on the ground that the territory therein described overlapped the territory described in the first petition, though the commissioners knew of the filing of the second petition at the time the first petition was granted, in view of Vernon's Ann. Civ. St. Supp. 1922, art. 637d, and Acts 37th Leg. 1921, c. 41 (Vernon's Ann. Civ. St. Supp. 1922, arts. 7020½–7020½k).

2. **Mandamus ⟊74(2)—Commissioners' court may be compelled by mandamus to order road bond election.**

   As a general proposition the commissioners' court has no discretion to refuse to grant a petition. complying with Rev. St. 1911, tit. 18, c. 2, to establish a road district and to order an election for the purpose of determining whether bonds shall be issued for road purposes, and mandamus will lie to compel the performance of this duty.

3. **Highways ⟊90—Commissioners' order for bond election for improvement of designated roads valid, though petition requested bond election for improvement of roads in general.**

   Though the petition for the establishing of a road district and the holding of a road bond election designated that the proceeds will be used for the maintenance of roads generally, the order of the commissioners' court for a bond election for the construction of two designated roads was valid, as it is left to the commissioners' discretion as to what roads shall be constructed and the designation of the roads to be

improved prior to the election is to be commended.

Appeal from District Court, Clay County; H. R. Wilson, Judge.

Petition for mandamus by J. L. Huggins and others against J. F. Vaden, County Judge. From a ruling denying the writ, petitioner appeals. Affirmed.

Taylor & Taylor, of Wichita Falls, and H. M. Muse, of Henrietta, for appellant.

Stine & Stine and Wantland, Dickey & Glasgow, all of Henrietta, for appellee.

DUNKLIN, J. [1] By the provisions of chapter 2 of title 18 of the Revised Civil Statutes of Texas, any defined district of any county is authorized and empowered to issue bonds in an amount not to exceed one-fourth the assessed valuation of the real property situated in such district, and to levy and collect taxes to pay off said bonds, for the purpose of constructing and maintaining and operating macadamized, graveled, or paved roads and turnpikes, or in aid thereof, within the boundaries of said defined district. By other provisions of the same chapter the right to issue such bonds is made dependent upon the votes of two-thirds of the resident property tax paying voters in said district, and before an election can be ordered by the commissioners' court for the issuance of such bonds a petition must be presented and filed with the commissioners' court, signed by at least 50 of the resident property tax paying voters of the district. By article 628 of that chapter it is made the duty of the commissioners' court to order such election whenever such a petition so signed is presented.

Under and by virtue of the provisions of the statute, M. B. Powell and 224 other persons, all of whom were qualified property tax paying voters of Clay county, filed with the commissioners' court of that county on February 10, 1923, a petition praying for the establishment and creation of a road district in that county, to be known and designated as "road district No. 2 of Clay county, Texas," and praying for an election to be called to determine whether or not $575,000 of bonds bearing interest at the rate of 5½ per cent. per annum should issue for the purpose of—

"constructing, maintaining, and operating macadamized, graveled, or paved roads and turnpikes, or in aid thereof, and whether or not a tax should be levied upon the property of said proposed road district subject to taxes for the purpose of paying the interest on said bonds and to provide a sinking fund for the redemption thereof at maturity."

The petition described the road district to be so created by metes and bounds, and all of the signers of the petition resided within those boundaries.

⟊For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On February 12, 1923, another petition was filed in the same court to create and establish another road district in the same county, designated as road district No. 5, and praying for an election to determine whether or not bonds in the sum of $75,000 should be issued for the same purpose as was designated in the first petition. The petition for road district No. 5 was signed by 85 qualified property tax paying voters residing in that proposed district, and likewise defined the boundaries of that district, and a large portion of the territory embraced in those boundaries was included within the boundaries of road district No. 2.

On February 12, 1923, the same date the petition for road district No. 5 was filed, and after the same had been filed, the commissioners' court acted upon and granted the petition for road district No. 2; the order so made expressly establishing the territory defined in that petition as road district No. 2. The order also provided for the holding of an election as prayed for in the petition in that district, the date of the election being set for March 20, 1923. The petition for road district No. 2 was presented and acted upon before that for district No. 5 was presented, but at the time the first petition was presented the commissioners' court knew that the second petition was on file.

The second petition, which was for road district No. 5, was also presented to the court on February 12, 1923, but after the first petition, which was for road district No. 2, had been acted upon and granted. When the second petition was presented, the court called attention of the signers of that petition to the fact that the territory included in that proposed district, in a large measure, overlapped and embraced a portion of road district No. 2 which had already been established, and stated to the petitioners that they could not legally establish the proposed district No. 5, as the same was described in the petition by reason of such overlapping. The court thereupon proposed to the petitioners for road district No. 5 that the boundaries of that district as proposed by the petitioners be so changed as to exclude therefrom that portion which overlapped and was embraced in district No. 2, which had already been created, and offered to said petitioners to establish road district No. 5 and order the election prayed for, if they would make the changes suggested in boundaries. That suggestion and offer on the part of the court was declined by those petitioners, and on account of such overlapping the court declined to grant the petition as the same was drawn and presented.

Thereupon the petitioners for road district No. 5 applied to the judge of the district court for an order commanding the commissioners' court to grant the petition for district No. 5 and to order an election to determine whether or not bonds should be issued as prayed for in that petition. The district judge refused to grant the writ of mandamus prayed for, and from that ruling the petitioners for the proposed road district No. 5 have appealed.

[2] We have no doubt that as a general proposition the commissioners' court has no discretion to refuse to hear and grant a petition to establish a road district and to order an election for the purpose of determining whether or not bonds shall be issued for road purposes, whenever such a petition is prepared and presented in compliance with the provisions of chapter 2, title 18, of the Statutes, and that a mandamus will lie to compel the performance of such duty whenever necessary. That conclusion is well sustained by the following decisions of this state: Sansom, Mayor, etc., v. Mercer, 68 Tex. 488, 5 S. W. 62, 2 Am. St. Rep. 505; Kimberley v. Morris, 87 Tex. 637, 31 S. W. 808; Ferguson v. Leigh, County Judge (Tex. Civ. App.) 193 S. W. 206; Boynton v. Brown (Tex. Civ. App.) 164 S. W. 893; Moore v. Coffman, 109 Tex. 93, 200 S. W. 374. Article 637d, Rev. Statutes, 1922 Supplement, reads as follows:

"Where a political subdivision or defined road district of a county has heretofore been established and issued bonds or is hereafter established and issues bonds, no political subdivision or defined road district shall thereafter be created or established overlapping the same territory or embracing any part thereof while any of the bonds of such political subdivision or defined road district are outstanding and unpaid, except as hereinabove provided for the county as a whole;

"Provided that in the event the boundaries of any defined road district hereinafter created or established overlap or embrace any part of the territory or area of another defined road district or road districts theretofore created or established, such road district shall be invalid only as to that portion thereof which overlaps or embraces any part of the territory of a defined road district or road districts theretofore established, and it shall be the duty of the commissioners' court of the county in which such conflicting road districts are situated to pass a nunc pro tunc order accurately defining the boundaries of the subsequently created road district in conformity to the boundaries of such contiguous road district or road districts;

"Provided further that all defined road districts in this state heretofore attempted to be established when the territory already embraced therein overlaps any portion of the territory embraced within the boundaries of another defined district or road district theretofore formed or established are validated in all respects, except as to that portion thereof which overlaps or embraces any part of the road district or road districts first created or established, and it shall be the duty of the commissioners' court of the county in which such districts are situated to pass nunc pro tunc orders accurately defining the boundaries of the road district attempted to be created or established so as to conform to the boundaries of the contiguous road district or road districts;

"And provided that all regular and proper proceedings and orders had made in the issuance of bonds or proposed bonds in such defined road districts attempted to be established prior to the taking effect of this act are hereby in all things validated, ratified and confirmed; provided that this act shall in no way affect or repeal any provision of any special road law heretofore enacted for any county."

Since appellants' petition for the establishment of road district No. 5 was in strict statutory form and was signed by more than the required number of qualified property tax paying voters of that proposed district, they insist that the commissioners' court had no discretion to refuse to grant the same, even though the proposed territory comprised in that district overlapped that covered by road district No. 2. In that connection it is contended that the objectionable feature of such overlapping could be remedied as provided in article 637d, quoted above, and that the statutory method so prescribed is the only method to reach that result. It is further insisted that the fact that at the time the petition was presented road district No. 2 had not issued any bonds, nor had an election for that purpose been held, is an additional reason why the court had no discretion to refuse that petition. The further contention is made that the two petitions, the one for road district No. 2 and the other for road district No. 5, were of equal dignity, and that the commissioners' court had no discretion to give precedence to the first petition to the exclusion of the second, by granting the first petition when they knew that the second petition was on file, thus placing the appellants in the position to seek to establish a district which would overlap district No. 2.

While it will be noted that there is no express provision in article 637d to the effect that the commissioners' court would have the right to refuse a petition for the creation of a road district if such district overlapped some road district already established and in which bonds had not been issued, yet there is an express provision that the new district will be invalid to the extent that the same overlaps some previously established district which has already issued road bonds, and that in the event of such overlapping it is made the duty of the commissioners' court to reform the boundaries of the new district, so as to exclude therefrom the portion which overlaps the old. The same legislative purpose to avoid the overlapping of an old district by one newly created is manifested in chapter 41, of the Acts of the 37th Legislature, which appears in chapter 9b, articles 7020½ to 7020½k, inclusive, Vernon's Civil Statutes, vol. 2, 1922 Supplement. The purpose of that act, as expressed in its caption, was to provide for the creation of road districts to include one or more districts already created, and other territory in addition thereto, and for the issuance of road bonds for said larger district. By section 1 of the act authority is given to include one or more previously created districts in an enlarged road district. But by section 4 of the act, which is article 7020½c of the Statutes, it is expressly provided that, when such an enlarged district is created, "no fractional part of a previously created road district shall be included within the limits" of the new district.

It cannot be doubted that the commissioners' court did not abuse its discretion in taking up and granting the petition for road district No. 2, which was the first petition presented, even though they knew that the second petition had been filed. Indeed, we are unable to perceive how it can be said that the court had any discretion to refuse that petition when it was presented. When the second petition was presented, an order had already been made for an election to determine whether or not bonds should be issued for road district No. 2. Even though the second petition had been granted, then after the issuance of bonds on district No. 2, it would have been necessary to reform the boundaries of district No. 5, so as to avoid the overlapping. We know of no rule that would warrant the issuance of a mandamus to enforce the performance of a useless act; in other words, to require the granting of a petition which the same court would later be compelled to nullify in part.

[3] Another contention is made by appellants that the order of the commissioners' court for an election to be held in road district No. 2 was invalid, and was inequitable and unjust to appellants, in that it designated two particular roads, for the construction and maintenance of which the money derived from the sale of bonds would be used. It is pointed out that such order did not follow the language of the petition, which designated the uses to be made of the proceeds of the bonds as being for the construction and maintenance of roads generally in that district. It is pointed out, further, that the order made will require all the money to be expended upon the two roads designated, to the exclusion of all other roads in the district, if necessary, and that the two roads so designated were so remote from the property of the appellants as to be useless to them in the enjoyment of their property, although the same will be burdened with taxes to pay for their construction and maintenance, while the road for the construction of which the second petition was designed was so located as to be convenient to the use of their property and almost a necessity for such use.

While the court, in ordering the election, could have followed the language of the petition in stating the purposes for which the proposed bonds were to be issued, we do not believe that the order was rendered invalid by designating the particular roads which

the commissioners intended to improve with the proceeds of the bonds. If the election had been ordered without designating the particular roads intended to be constructed, the court could have used the money for the two roads designated in the order, to the exclusion of other roads in the district, if, in their discretion, such use was proper. And we are of the opinion that the action of the court in designating the particular roads which they intended to improve is to be commended rather than condemned, in that the voters would know in advance just what use was to be made of the money which had been raised by taxation upon their property. The action of the court was in a spirit of fairness, which was in keeping with the principles announced by the Supreme Court in the case of Moore v. Coffman, 109 Tex. 93, 200 S. W. 374, cited above. The court has the discretion to establish roads in such portions of the county as it deems best for the citizens at large. In so doing, necessarily, the roads established inure more to the advantage of some property owners than to others. The statutes do not require that such roads shall be equally advantageous to all lands in the road district. Roads could not be constructed in compliance with such requirement if any there was. The decision of the question as to what roads shall be constructed and maintained is left to the discretion of the commissioners, and we are unable to say from the record before us that that discretion was abused in the present instance.

For the reasons noted, the judgment of the trial court, refusing the writ of mandamus, is affirmed.