**HUGGINS et al. v. VADEN, County Judge, et al. (No. 10825.) \***

(Court of Civil Appeals of Texas. Fort Worth. Dec. 1, 1923. Rehearing Denied Jan. 12, 1924.)

**1. Highways ⬳90—Commissioners' court may refuse to order election for road district including territory in district for which election has been ordered.**

Under Vernon's Ann. Civ. St. Supp. 1922, art. 637d, the county commissioners' court is not required to order an election to establish a road district including territory in a district already established, and is justified in refusing to order an election on proponents' refusal to eliminate territory included in a district for which it has already ordered an election.

**2. Highways ⬳90—Order for road district election held not invalid as limiting purpose stated in petition.**

A commissioners' court order for an election to establish a road district and issue bonds to construct two roads therein described *held* not invalid as limiting the general purpose, outlined in the petition, of constructing and maintaining "paved roads and turnpikes, or in aid thereof," especially in view of the commissioners' testimony as to their intention to build other roads if there was any money left.

**3. Highways ⬳90 — Commissioners' duty to call district election on compliance with legal requirements irrespective of reasons for boundaries.**

If a petition to establish a road district is signed by the requisite number of resident property taxpaying voters and 'the other legal requirements are complied with, it is the duty of the commissioners' court, in the absence of fraud, to call an election under Rev. St. art. 628, irrespective of the reasons impelling those drawing up the petition in determining the boundaries.

**4. Highways ⬳90—Excluded testimony held not such as would have justified commissioners' court in refusing to order election.**

Excluded testimony as to discussion of the probability that a proposal to establish a road district would not carry if certain territory were included *held* not such as would have justified the commissioners' court in refusing to order an election to establish a district not including such territory.

On Motion for Rehearing.

**5. Highways ⬳90 — Existence of duly established road district cannot be collaterally attacked.**

The corporate existence of a road district organized under Rev. St. art. 637, making it a body corporate, and the rights of the trustees or county commissioners thereunder, cannot be questioned in a collateral proceeding, such as a suit to enjoin the issuance and sale of bonds for fraud, which must be raised by a contest of the election or some other direct attack.

Appeal from District Court, Clay County; Paul Donald, Judge.

Suit by J. L. Huggins and others against J. E. Vaden and others, as County Judge and County Commissioners of Clay County, for an injunction against the issuance and sale of road bonds. Judgment for defendants, and plaintiffs appeal. Affirmed.

Taylor & Taylor and J. L. Lackey, all of Wichita Falls, for appellants.

Wantland, Dickey & Glasgow, of Henrietta, for appellees.

BUCK, J. This is an appeal from an order and judgment of the district court of Clay county, refusing a writ of injunction against the county judge and county commissioners of said county; plaintiffs praying for an injunction against the defendants restraining them from issuing certain road bonds, and from signing the same, and from registering said bonds and from offering the same for sale. This was a trial on the merits, and the trial court, after the introduction of the evidence, instructed the jury to find for the defendants. The cause was before us on June 9, 1923, that appeal being from an order and judgment of the trial court denying a writ of mandamus. At the same term of this court, there was a case before us in which the same parties were involved, and in which the trial court had denied a temporary restraining order. Justice Dunklin wrote the opinion, found in 253 S. W. 877, and the writer wrote the opinion of the court in the injunction proceedings, in 'the main adopting the opinion written by Justice Dunklin. We believe the main issues involved in this appeal were decided in the two cases before mentioned, and that it would be a waste of time and effort to go over them again and to discuss them at length. The views we expressed in the said two opinions are still held by us, and we still adhere to them. Therefore we will discuss only the questions which were not raised on the former appeals.

Objection was raised on the two former appeals, and here, to the action of the commissioners' court in favorably acting on a petition for an election in the county of Clay to determine whether there should be established a road district, known as road district No. 2. As described in the petition, it ran in a northwesterly and southeasterly direction across Clay county and through Henrietta, the county seat. It is claimed that the commissioners, and those in favor of the creation of the road district and the success of the election therefor, learned that the people living south of Bellevue, in the southeastern part of the county, were opposed to the creation of the road district, and would vote against it. Thereupon, those favoring the creation of the road district and the issuance of the bonds, and concerned in the preparation of the petition for such road dis-

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

\*Writ of error dismissed for want of jurisdiction March 5, 1924.

trict, extended the boundary of the proposed road district for only two miles south of the road in the southeastern part of the county and near Bellevue, instead of five miles, as was proper, and extended the boundary on the north of the road to about seven miles, thus taking in on the north side of the road acreage of the plaintiffs below, which was not adjacent to the proposed road, and should not have been burdened with the tax for building the cardinal road; that the petition, with these unfair and discriminatory boundaries, was passed on by the commissioners' court and the election ordered, and that the required majority of voters voted affirmatively for the creation of such road district; that the action of the commissioners' court in adopting the petition with such unjust and discriminatory boundaries, and the order of the commissioners' court for an election to be held on such petition, and the carrying of the election favorable to the creation of the district, and the issuance of the road bonds in the sum of $575,000, for the purpose of constructing, maintaining, and operating macadamized, graveled, or paved roads and turnpikes in said district, would impose an unjust burden in the way of taxes upon the lands of plaintiffs. It was further alleged that a second petition, for road district No. 5, was filed with the commissioners' court two days after the filing of the first petition, and also was before the commissioners' court at the time that the commissioners considered the first petition and ordered the election thereunder, and that said second petition did provide for an extension of the road district approximately for five miles on each side of the road, and was an equitable distribution of the burden of taxes on those living adjacent to the road, and who should have legally and equitably borne the expenses of building the same.

[1] The petition for an election to create road district No. 2 was filed on Saturday, and the petition for an election to create road district No. 5 was filed on Monday thereafter. The court took under consideration the petition for road district No. 2 first and ordered the election thereunder. When they considered the petition for road district No. 5, it was found that a large portion of the territory included in such road district was also included in road district No. 2, for which election had already been ordered. Plaintiff Huggins was before the commissioners' court personally, and apparently by counsel, and he was told that if he would eliminate from his petition that part of the territory which was included in road district No. 2, the commissioners' court would order the election for 'road district No. 5. He declined to do this, but insisted that the election be ordered for the district as outlined in the petition. Under article 637d, Vernon's Ann. Civ. St. 1922 Supp., quoted in Justice Dunklin's opinion, the commissioners'

court were not required to order an election for the establishment of a road district overlapping the territory included in a district theretofore established, and we believe that the commissioners' court in the instant case was justified under the law in refusing to order an election for road district No. 5 as presented, and we think, in fact, the commissioners' court did refuse to order the election for the establishment of district No. 5, and refused to order the election for the establishment of such district because Huggins and the proponents of the road district No. 5 refused to eliminate that part of the district overlapping district No. 2. We do not think they can be heard to complain of the failure of the court to grant their petition.

[2] We do not think that the cases of Moore v. Coffman, 109 Tex. 93, 200 S. W. 374, also Id. (Tex. Civ. App.) 189 S. W. 94, and cases of Ferguson v. Leigh, County Judge (Tex. Civ. App.) 193 S. W. 206, and City of Beaumont v. Matthew Cartwright Land & Improvement Co. (Tex. Civ. App.) 224 S. W. 589, cited by appellant, are applicable to a state of facts as presented here. The petition for road district No. 2 was "for the purpose of constructing, maintaining and operating macadamized, graveled or paved roads and turnpikes, or in aid thereof," in said district. In the order of the commissioners' court, ordering the election, it was recited:

"The roads to be created and built being a paved concrete road as nearly paralleling the Denver Railroad from the Wichita county line to the Montague county line through Clay county as practicable; and a graveled road from Henrietta to the north boundary of said district on the Four Miles Lane, and south to the south boundary of said district."

We do not think that the limitation, if it be such, in the order of the commissioners' court limiting the purpose for which bonds might be issued for the construction of the two roads in the said district, is in conflict with the purpose outlined in the petition for the construction and maintenance of the "paved roads and turnpikes, or in aid thereof"; while the commissioners in testifying stated that if there was any money left over after the completion of the cardinal road, they intended, unless restrained by law, to build other roads in the district. At least that question does not apply at this time, and will not arise until it shall be determined that the funds derived from the sale of the bonds is more than sufficient to build the two roads indicated. If they are more than sufficient, than the appellants can get, in part at least, what they are contending for, to wit, the building of other roads in the district. We think the commissioners' court had the right, even without an order, to build one or more of the roads, and then determine whether there were sufficient funds out of the bond issue to build other roads in

the district, and we do not consider that the order of the commissioners' court limited the purpose for which the bonds were issued. No particular roads to be constructed were specified in the petition; hence the rule laid down in Black v. Strength, County Judge, 112 Tex. 188, 246 S. W. 79, does not apply.

[3] Nor do we think that any error is shown in the failure of the trial court to admit the testimony of J. W. Gerard, one of the county commissioners, in answer to the question:

"I want to ask you if it isn't a fact that you knew that the people who had signed the petition, or who had drawn the petition, drew it with the view of leaving out certain voters lying south of Bellevue and south of the fixed line, that was fixed, because of the fact that they were afraid the election would be defeated."

It is stated in the bill of exception that the answer to this question would have been in the affirmative if the witness had been permitted to answer. The commissioners' court was not concerned with the reasons which impelled those drawing up the petition in determining what should be the boundaries of the district. If the petition was signed by the requisite number of property taxpaying voters residing within the district described in the petition, and the other legal requirements complied with, and in the absence of fraud, the duty of the commissioners was to call an election for the purpose of submitting to the taxpaying voters of the district the question of whether the district should be created and bonds issued. Article 628, Rev. Civ. Stats; Huggins v. Vaden (Tex. Civ. App.) 253 S. W. 877, 878, and authorities there cited.

[4] We think that no injury is shown to appellants by the refusal of the court to admit the answer, which, it is claimed, would have been in the affirmative, of witness Sherwood Gowan to the question propounded, to wit:

"In that meeting state to the court whether or not you publicly stated there, Mr. Gowan, and that it was discussed, that if the territory extended as much as five miles south in the Bellevue section of the country, taking in that part of the country that leads out to Vashti, that the election would not carry."

It is not shown in the bill of exceptions, or even in the statement of facts, that any of the commissioners were present at the meeting mentioned, and even if they were present and heard the discussion, we do not believe they would have been justified in refusing to order the election for that reason. The same ruling with regard to assignments based on bill of exception No. 3, which complains of the refusal of the court to admit the answer of Sherwood Gowan, which it is claimed would have been in the affirmative, to the question of whether it was generally discussed in the Bellevue community and in the Henrietta section when Gowan was present, that if the line was run five miles south of Bellevue there was a chance for the election to be defeated.

On the whole, we do not believe there was any evidence in the record which required the case to be submitted to the jury, and that the trial court's action in peremptorily instructing the jury was justified.

The judgment of the trial court is therefore affirmed.

### On Motion for Rehearing.

Appellants have filed a motion for rehearing, in which they urge that we were in error in holding that the trial court did not err in giving a peremptory instruction for defendants, and in refusing to admit certain testimony of J. W. Jerard and Sherwood Gowan, and in holding, in effect, that a legal fraud was not perpetuated by the defendants in ordering the election upon the petition drawn as it was, etc. We have carefully considered the motion, and believe that it should be overruled.

[5] We are further of the opinion that a question of fraud, either by those concerned in drawing and circulating the petition, or by the members of the commissioners' court, cannot be raised by way of a collateral attack, as is attempted in this case, and any question of fraud, in order to merit consideration, must have been raised by a contest of the election, or by some other direct attack. Article 637 of the Civil Statutes, providing for the creation of these districts, makes the district when so established a body corporate. When the creation of such a district is authorized by statute, and it has been so organized by color of such authority, its corporate existence and the rights thereunder of the trustees or county commissioners cannot be questioned in a collateral proceeding. In Coffman v. Goree Independent School District, 141 S. W. 132, writ of error refused, this court, speaking through Chief Justice Conner, said:

"We are of the opinion that the demurrers were properly sustained. The objections to the incorporation of the independent school district and to the right of appellee trustees to exercise their functions as such therein are not available in this action. True, as pointed out upon submission, our Supreme Court in the case of Parks v. West, 102 Tex. 11, 111 S. W. 726, sustained an attack of like character upon the Mertens independent school district, but in that case it was held that because of a limitation in the Constitution there was no legislative authority for the construction and incorporation of an independent school district such as that there under consideration. The incorporation, therefore, was absolutely void, and as such subject to attack in any action in which the right of a citizen was involved, but not so in the case we have under consideration. It is not contended, nor does the record give room for a contention, that there was not full legis-

lative authority for the formation and incorporation of the Goree independent school district and for the election of school trustees. The complaints made are, at most, but mere irregularities in the manner of creating the incorporated district and in the election of trustees by virtue of laws undoubtedly giving full authority for such incorporation and elections. Such irregularities, therefore, do not of themselves render the several elections and incorporation complained of entirely void. In such cases said Chief Justice Gaines for the Supreme Court in the case of El Paso v. Ruckman, 92 Tex. 89, 46 S. W. 26: 'The rule is well established that when the creation of a public corporation, municipal or quasi municipal, is authorized by statute and a corporation has been organized under the color of such authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding. The validity of the incorporation can only be determined in a suit brought for that purpose in the name of the state or by some individual under the authority of the state, who has a special interest which is affected by the existence of the corporation.' "

To the same effect are Davis v. Parks (Tex. Civ. App.) 157 S. W. 449, 454, writ refused, and cases cited; Cochran v. Kennon (Tex. Civ. App.) 161 S. W. 67, 69; Robertson v. Haynes, 190 S. W. 735, 736, by this court, speaking through Justice Dunklin; Dye v. Brewer, 119 Miss. 359, 80 South. 762.

Therefore, irrespective of other reasons, we conclude that appellants' motion for rehearing should be overruled on the ground that this is a collateral attack on the validity of a quasi municipal corporation, organized under color of statutory authority.

The motion for rehearing is overruled.