**MEURER et al. v. HOOPER et al.***
(No. 10213.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 10, 1925. Rehearing Denied Feb. 28, 1925.)

1. **Highways** ⟨key⟩90—**County court had jurisdiction of subject-matter of each petition for creation of different road district.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 628, county court had jurisdiction of the subject-matter of each petition for the creation of a different road district pursuant to articles 627, 631, and Vernon's Ann. Civ. St. Supp. 1918, art. 637d.

2. **Mandamus** ⟨key⟩154(2)—**Allegations of petition for mandamus, to compel commissioners' court to do certain things in connection with petition for road district, held to confer jurisdiction upon district court to hear petition.**

Allegations of petition for mandamus, charging defendants, as members of commissioners'

·court, with abuse of discretion in refusing to allow an amendment to a petition for creation of road district based on Vernon's Sayles' Ann. Civ. St. 1914, arts. 627, 628, 631, and Vernon's Ann. Civ. St. Supp. 1918, art. 637d, and with fraud, conferred upon district court jurisdiction to hear petition for mandamus to compel the doing of certain things in connection with petition.

**3. Highways �köö90—Commissioners' court had power to allow duly authorized amendment of petition for creation of road district.**

Commissioners' court had power to allow duly authorized amendment of petition for creation of road district.

**4. Highways �köö90—Court, on presentation of petition for creation of road district, had no discretion to refuse to hear and grant it, order election, canvass returns, and order issuance of bonds for district.**

Under ordinary circumstances, the commissioners' court on presentation to it of a petition for the creation of a road district pursuant to Vernon's Sayles' Ann. Civ. St. 1914, arts. 627, 628, 631, and Vernon's Ann. Civ. St. Supp. 1918, art. 637d, had no discretion to refuse to hear and grant the petition to order an election, canvass the returns, and order issuance of bonds for district.

**5. Torts ⊜ooo4—Lawful act not unlawful when done with wrong motive.**

Act lawful in itself does not become unlawful when done with wrongful motive towards another.

**6. Highways ⊜ooo90—Action of members of commissioners' court towards creation of road district, pursuant to statutory requirements, not void for fraud or abuse of discretion.**

Action of members of the commissioners' court towards the creation of a road district, pursuant to statutory requirements (Vernon's Sayles' Ann. Civ. St. 1914, arts. 627, 628, 631, and Vernon's Ann. Civ. St. Supp. 1918, art. 637d), could not be *held* void for fraud or abuse of discretion.

**7. Highways ⊜ooo90—Fraud not predicable on mere exercise of right to petition for election in road district for bond issue.**

Fraud could not be predicated on mere exercise of right to petition for election for bond issue in connection with the creation of a road district, pursuant to Vernon's Sayles' Ann. Civ. St. 1914, arts. 627, 628, 631, and Vernon's Ann. Civ. St. Supp. 1918, art. 637d.

**8. Conspiracy ⊜ooo3—Acts of defendants, in aiding and abetting lawful acts of petitioners for· road district, held not "conspiracy" to wrong petitioners of another road district.**

Acts of defendants, as members of the commissioners' court, in aiding and abetting lawful acts of petitioners of a road district pursuant to Vernon's Sayles' Ann. Civ. St. 1914, arts. 627, 628, 631, and Vernon's Ann. Civ. St. Supp. 1918, art. 637d, *held* not a conspiracy to wrong petitioners petitioning for the creation of a different road district; "conspiracy" be-

ing a combination between two or more persons by concerted action to accomplish an unlawful purpose by unlawful means (citing Words and Phrases, Conspiracy).

**9. Highways ⊜ooo90—Phrase "affected thereby," appearing in constitutional provision as to property to be included in district, construed.**

The phrase "affected thereby," appearing in Const. art. 3, § 52, refers to taxes which will be assessed against property, and not to benefits which will accrue to the property by reason of proposed improvements.

**10. Appeal and error ⊜ooo719(1)—Contention not presented by assignment of error will not be discussed or determined on appeal.**

Contention ·which is not presented by assignment of error will not be discussed or determined on appeal.

On' Motion for Rehearing.

**11. Highways ⊜ooo90—Filing of written petition for creation of district necessary to vest commissioners' court with jurisdiction to grant petition and order election.**

The filing of a written petition pursuant to Vernon's Sayles' Ann. Civ. St. 1914, art. 627, for the creation of a road district, is necessary to vest the commissioners' court with jurisdiction to grant petition and order election.

**12. Highways ⊜ooo90—Refusal of commissioner's court to permit radical amendment of petition for creation of road district by attorneys authorized by parol to make amendment held not abuse of discretion.**

Refusal of the commissioners' court to permit radical amendment to a petition for the creation of a road district, pursuant to Vernon's Sayles' Ann. Civ. St. 1914, arts. 627, 628, 631, and Vernon's Ann. Civ. St. Supp. 1918, art. 637d, by attorneys authorized by parol to make the amendment, *held* not abuse of discretion justifying relief by mandamus.

Error from District Court, Archer County; H. R. Wilson, Judge.

Petition for mandamus by J. F. Meurer and others against E. M. Hooper and others. Judgment of dismissal, and petitioners bring error. Affirmed.

Watkins & Walsh, of Wichita Falls, for plaintiffs in error.

John R. Moore and W. E. Forgy, both of Archer City, for defendants in error.

DUNKLIN, J. Article 627, Texas Complete Statutes of 1920 (or Vernon's Sayles' Ann. Civ. St. 1914, art. 627), reads as follows:

"Any county in this state, or any political subdivision or defined district, now or hereafter to be described and defined, of a county, is hereby authorized and empowered to issue bonds, or otherwise lend its credit, in any amount not to exceed one-fourth of the assessed valuation of the real property of such county, or political subdivision, or defined dis-

trict thereof, and to levy and collect such taxes to pay the interest upon such bonds and provide a sinking fund for the redemption thereof, for the purpose of constructing and maintaining and operating macadamized, graveled or paved roads and turnpikes, or in aid thereof."

By article 628 of the same chapter, it is provided that upon a petition of 50, or a majority of resident property tax-paying voters of any county, or political subdivision or defined district of any county, to the county commissioners' court of such county, it is made the duty of that court to order an election to be held in that defined district to determine whether or not the bonds of the district shall be issued in an amount not to exceed one-fourth of the assessed value of the real property of the district, "for the purpose of constructing, maintaining or operating macadamized, graveled or paved roads and turnpikes, or in aid thereof"; and at such election there shall also be submitted to such resident property taxpaying voters the question as to whether or not a tax shall be levied upon the property of said proposed district subject to taxation, for the purpose of paying the interest on said bonds and to provide a sinking fund for the redemption thereof. Then follow provisions requiring notices to be issued and posted of the election to be held, and prescribing the manner of holding the election, making returns thereof to the commissioners' court, etc.

Article 631 reads as follows:

"If, after the result of said election is known, it shall appear to the commissioners' court of the county in which said election was held, that a two-thirds majority of the votes cast at such election were in favor of the issuance of bonds, it shall be the duty of said commissioners' court, as soon thereafter as practicable, to issue said bonds on the faith and credit of said county, or of said political subdivision or defined district now or hereafter to be described and defined, within the state of Texas, and which may or may not include towns, villages, or municipal corporations of the county, as the case may be."

By other articles, it is provided that the bonds shall draw interest at a rate of not exceeding 5½ per cent. per annum, and that they shall mature not later than 30 years from date, and require the levy of a tax on the property within the district sufficient to meet the interest on the bonds, and provide a sinking fund to liquidate them at maturity.

Article 637d, Vernon's Ann. Civ. St. Supp. 1918, provides that when a district is thus created no other district shall be established that will overlap any portion of it.

On January 7, 1924, a petition was filed in the commissioners' court of Archer county for an election to be held to determine whether or not bonds of a certain district should be issued for the purpose of constructing, maintaining, and operating macad-

amized, graveled, or paved roads and turnpikes or in aid thereof in said district. The district was designated as district No. 1, its boundaries were defined, and the petition was signed by 79 of the property taxpaying voters of the district; that number being in excess of the number required by article 628 of the statutes. The petition was in statutory form and included the statement that the amount of the bonds proposed to be issued was $325,000, maturing in 30 years and drawing interest at the rate of 5½ per cent. per annum. The proposed district No. 1 embraced a strip 5 or 6 miles wide off the east side of Archer county.

On January 14, 1924, subsequently to the filing of the petition for road district No. 1, another petition was filed for the issuance of bonds in the sum of $250,000 for like purposes by what is designated as road district No. 2, which included about one-half of the county and covered a strip off the north side of the county, running across the county from east to west and overlapping a part of the proposed road district No. 1. That petition was also in due form, having the signatures of the required number of property taxpaying voters within the district.

On January 14, 1924, when the petition for road district No. 1 came on for hearing, attorneys for those petitioners who were in court, and who presented the same, requested the court to grant them leave in behalf of the petitioners then and there to so amend the petition as to change the amount of the bonds to be issued by the district from $325,000, as stated in the petition, to $100,000, and also change the rate of interest the bonds should bear from 5½ per cent., as stated in the petition, to 5 per cent. The attorneys did not have the written authority from the petitioners to make such change, and for lack of such evidence of authority the court declined to grant the request to so amend the petition. Thereupon the attorneys asked to be allowed time to procure such written authority from the petitioners and to amend the petition later, which the court declined to grant. On the same day the petition for road district No. 2 was presented to the commissioners' court and was by that court granted. At the same time, the court ordered an election to be held within district No. 2 to determine whether or not the bonds in the sum of $250,000, as prayed for, should issue.

On January 17, 1924, the court allowed petitioners for road district No. 2 to so amend their petition as to increase the proposed bond issue from $250,000 to $300,000, maturing in 30 years and drawing interest at the rate of 5½ per cent. per annum; the rate of interest and date of maturity being the same as proposed in the original petition. The court then ordered an election to be held in road district No. 2 to determine

whether or not that district should issue bonds in the sum of $300,000. The election held in obedience to that order resulted in favor of the bond issue, and upon returns being made the court ordered the issuance of bonds and levied a tax to provide for the payment of interest and also a sinking fund to meet the principal; all in compliance with the statutes in such cases made and provided.

On January 17, 1924, when the court allowed the amendment to the petition for road district No. 2 and ordered the election that was later held, as above related, attorneys representing petitioners for road district No. 1 appeared and presented to the court authority in writing, signed by 50 of the persons who had signed the original petition, for that road district to so amend their original petition as to change the amount of the bond issue originally proposed from $325,000 to $100,000, and the rate of interest from 5½ per cent. to 5 per cent. At the same time, the attorneys for road district No. 1 again asked leave of the court to so amend said original petition, and prayed the court that the same be granted as amended, and objected to the amendment of the petition for road district No. 2 and the granting thereof as amended, all of which requests the commissioners' court refused.

J. E. Meurer, and four others who signed the petition for road district No. 1, instituted this suit against the county judge and county commissioners of Archer county, alleging the presentation of the two petitions and the action of the court thereon, and all the other facts recited above, and prayed the court for a writ of mandamus commanding the defendants to allow the proposed amendment of the petition for road district No. 1 so as to change the amount of the bond issue from $325,000 to $100,000, and to change the rate of interest the bonds should draw from 5½ per cent. to 5 per cent. per annum; and to enter an order recognizing the creation and establishment of road district No. 1, and ordering an election to be held in that district to determine whether or not bonds should be issued in the sum of $100,-000, drawing interest at the rate of 5 per cent. per annum, for the purposes authorized by the statutes in accordance with the prayer of the petition filed for the creation of road district No. 1; and further commanding the defendants to enter an order nunc pro tunc, reforming the boundaries of road district No. 2 so that the same will not overlap the boundaries of the proposed road district No. 1.

The following is a brief statement of additional facts alleged in plaintiffs' petition as summarized in briefs filed for plaintiffs in error.

"The county is 30 miles square. In the northwest portion lie the towns of Dundee, Mankins, and Holliday; near the center is Archer City; to the southwest is Megargle; on the east side are the towns of Windthorst and Scotland and the Lake Creek community. The towns named, except Windthorst, Scotland, and Lake Creek, have railroad facilities in addition to the natural dirt roads in the communities. The Ozark Trail connects Holliday, Mankins, and Dundee in the northwest corner of the county with Wichita Falls, Archer City, and points south in the center of the county. In the southwest corner of the county is the 3F Highway. These highways are maintained by the state highway department.

"The route of the road proposed by the plaintiffs running from Wichita Falls through Windthorst and Scotland is a county road, but the only road serving these communities. It has been in existence over 35 years and is unimproved.

"The property valuations in the district outlined in the plaintiffs' road petition is $1,-098,000, or about ⅛ of the total property valuation of the county, while the area of the district is one-sixth of the county.

"In the north half of the county, the voting population lies west of the Wichita Falls and Southern track, and there are practically no resident property taxpaying voters east of the track in the north half of the county.

"Road district 1, as outlined by the petitioners, is inhabited by the same element who have resided in that district from 20 to 30 years; they have no railroad. The dirt roads traverse bottoms and creeks and are impassable in rainy weather. Road district 2, as hereinafter described, overlaps road district 1 on the north half of the county. The property valuation of road district No. 2, exclusive of the property overlapped in road district 1, is more than sufficient to permit the construction, maintenance, and operation of the Southwest Trail and the Ozark Trail in said road district No. 2, without including the property in road district No. 1, and this was well known to the defendants. The assessment in road district 2 for such purposes would not be more than half the assessment requisite to construct, operate, and maintain the proposed roads in road district 1.

"Wichita Falls, about 25 miles north of the average center of population of road district 1, is the only natural market used by the inhabitants of the district for the disposition of the produce of their lands and dairies. More than two-thirds of the population of road district 2 reside in the center and northwest portions of Archer county. The creation and establishment of a road that would be of material service to the inhabitants of road district No. 1 would be useless to the inhabitants of road district No. 2, while a road that would be of material benefit to the inhabitants of road district No. 2 would be useless to the inhabitants of road district No. 1. The establishment of road district 1 would enable the inhabitants to construct a road that would reach their market and would be of benefit to all the property in the district. That the benefit would actually exceed the cost of construction and maintenance of the road.

"The establishment of road district No. 2 would totally and perpetually cut off the inhabitants of road district No. 1 from an improved road to their natural market, as they

could not expect, by reason of the immense voting strength in the western portion of road district 2, to carry a bond issue for the improvement of the roads in the eastern portion of road district 2.

"Prior to the filing of plaintiffs' road petition, there had been great agitation in Archer county for the issuance of county special road bonds for the construction of improved roads. The defendants proposed to improve the Ozark Trail, the Southwest Trail, 3F Highway, and possibly a road from Archer City east to Windthorst, leaving out Scotland, the Lake Creek community, and the road from Windthorst, Scotland, and Lake · Creek to Wichita Falls. It was proposed to run a road from Archer City southwest to the Jack county line, leaving Windthorst and Scotland and about four-fifths of the population of the east side of the county without practical connection with a highway, as under the existing law a road district cannot be created overlapping another previously existing district so long as such other district owes any indebtedness.

"The establishment of this system of highways by the defendants would be of no benefit to the plaintiffs or any other property owner within the limits of road district No. 1, as they would perpetually be cut off from the establishment of any local improvement in the east side of the county, and their property would be subject to the arbitrary will and caprice of the west side of the county."

The petition further alleged that the defendants entered into an unlawful conspiracy with the resident property taxpaying voters outside of road district No. 1 for the purpose of defeating the establishment of said road district, and for the purpose of establishing road district No. 2, and embracing therein a portion of road district No. 1, in order to raise revenue for the construction of the Ozark Trial and the Southwest Trail, and for the purpose of arbitrarily preventing the construction of the proposed road in district No. 1; that in pursuance to the conspiracy the defendants caused a petition to be circulated in the county for the creation of road district No. 2, and that the defendants' refusal to allow the amendment to the petition for district No. 1 was arbitrary, capricious, and with wrongful design to carry out said unlawful conspiracy, and was actuated by no other purpose except to compel petitioners for road district No. 1 to involuntarily recognize the creation of road district No. 2 to the extent that the same overlapped road district No. 1, and to thereby deprive the petitioners for road district No. 1 of their prior right to the establishment of that district.

The trial court sustained a general demurrer to the petition, and plaintiffs declining to amend, the suit was dismissed. From that order the plaintiffs have prosecuted this writ of error.

[1, 2] The statutes specifically conferred jurisdiction on the commissioners' court to determine both petitions for the creation of the two road districts, and it cannot be said that the court was without jurisdiction of the subject-matter of both of those petitions. The only allegations in the plaintiffs' petition, which could possibly give the district court jurisdiction of the case presented by the petition therein filed, were those charging abuse of discretion on the part of the commissioners' court in refusing to allow the proposed amendment to the petition for the creation of road district No. 1, and the allegations of fraud on the part of the defendants. Haverbekken v. Hale, 109 Tex. 106, 204 S. W. 1162, and authorities there cited, including Bourgeois v. Mills, 60 Tex. 76; Bounds v. Kirven, 63 Tex. 159; Wilmarth v. Reagan (Tex. Com. App.) 242 S. W. 726.

[3] The commissioners' court of Archer county, being a court of general jurisdiction within the scope of the powers committed to it by the Constitution and statutes, had the power and authority to allow an amendment of the petition for road district No. 1, if the amendment offered was duly authorized by the signers of the original petition for the creation of said district. It appears from the allegations in the plaintiffs' petition filed in the district court that the signers of the petition for road district No. 1 had not specifically authorized the changes proposed by their attorney who presented it to the commissioners' court, and that the claim of such attorneys that they possessed such authority was based solely upon the general principles of · law with reference to the relation of attorney and client. The proposed change in the petition for a bond issue of only $100,000, instead of $325,000, was a radical departure from the wishes of the petitioners as expressed in the original petition, especially in view of the length of the road proposed to be improved by the proceeds of the sale of the bonds. We are cited to no authorities, and have found none, which would sustain a holding that the mere employment of attorneys to present the petition and have the court act upon it would carry with it authority to make such a radical change in the petition as was proposed. And we are of the opinion that the commissioners' court did not err in its said ruling. But at all events, it cannot be said that the refusal of the commissioners' court to permit the attorneys to make that amendment was such an abuse of discretion as to warrant the relief prayed for in this suit.

[4-6] The commissioners' court, under ordinary circumstances, had no discretion to refuse to hear and grant the petition when it was presented for road district No. 2, to order an election, canvass the returns, and order the issuance of the bonds for that district, all of which was done. Huggins v. Vaden (Tex. Civ. App.) 259 S. W. 204. And such action being in compliance with statutory requirements, the same cannot, standing alone, be held void for want of lawful authority, or for fraud · or for abuse of discretion on the

part of the defendants as members of the commissioners' court.

[7] By virtue of the statutes referred to, the resident property taxpaying voters in road district No. 2 had the legal right to petition for an election for the bond issue. Since they had that legal right, no proper charge of fraud can be made for its mere exercise.

[8] In Words and Phrases, vol. 1, p. 910, the following definition is given with citation of numerous decisions in support of it:

"A conspiracy is a combination between two or more persons by concerted action to accomplish an unlawful purpose by unlawful means."

As a general rule, an act lawful in itself does not become unlawful when done with a wrongful motive towards another. See cases cited in the following notes: Ann. Cas. 1912D, p. 789; 44 L. R. A. (N. S.) 228; 62 L. R. A. 673; also, 14 R. C. L. page 369. And the following decisions in this state give effect to that rule: Salado College v. Davis, 47 Tex. 131; Knowles v. Gary (Tex. Civ. App.) 141 S. W. 189; Pye v. Cardwell, 110 Tex. 572, 222 S. W. 153.

In Holbrook v. Morrison, 214 Mass. 209, 100 N. E. 1111, 44 L. R. A. (N. S.) 228, Ann. Cas. 1914B, 824, it was held, quoting from the syllabus, that—

"An injunction will not lie to prevent an owner of a city residence from advertising it for sale to negroes, if there is a bona fide intent to effect a sale, although he has the further motive of depreciating the value of other property in the neighborhood, and injuring the business of dealers in real estate."

Since the petitioners for road district No. 2 had the specific statutory right to resort to all the proceedings which led to the creation of that district and to have the bonds issued and the property in that district assessed to pay them, it follows, as a conclusion of law, that their act in so doing cannot, at least in an action such as this, be held fraudulent; and since such acts were lawful, the alleged acts of defendants in aiding and abetting those petitioners in their undertaking cannot in this suit be held a conspiracy to wrong the petitioners for road district No. 1 and other property owners in that district, as alleged in plaintiffs' petition filed in this suit, and therefore such action of defendants could furnish no proper basis for the relief prayed for by plaintiffs in this suit.

[9] It is insisted that articles 627 to 641 of the Revised Statutes, and section 52 of article 3 of the Constitution of Texas, do not authorize the inclusion in any proposed independent district of any property which is not to be benefited by the improvement proposed. And that since the allegations in the petition, the truth of which is admitted as against the general demurrer, were that the northern portion of the proposed district No. 1, which is included in district No. 2, will not be benefited by the roads to be built with the proceeds of the bond issue, the action of the commissioners' court in including such territory in road district No. 2 should be set aside. The article of the Constitution referred to provides that any defined district "upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts may issue bonds." It is insisted that the words used in the quotation "to be affected thereby" should be construed as limiting the property to be included in such district to property which will be benefited by the bond issue. We cannot agree with that contention. On the contrary, we are of the opinion that the words "affected thereby" had reference to the taxes which will be assessed against the property, and not to benefits which will accrue to the property by reason of the proposed improvements.

[10] The contention presented in plaintiffs' petition that the inclusion of a part of road district No. 1 in road district No. 2, and subjecting it to the payment of the bonds of the latter district, under the circumstances alleged, will be a taking of property without due process of law, in violation of the Fourteenth Amendment to the federal Constitution. But that contention is not presented by any assignment of error in this court, and hence it will not be discussed or determined.

For the reasons noted, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

Complaint is made of the statement in the opinion on original hearing to the effect that it appeared from the allegations in the petition that the signers thereof had not specifically authorized the changes proposed by the attorneys who presented it to the commissioners' court, and that the claim of such attorneys of such authority was based solely on the general principles governing the relation of attorney and client. Attention is drawn to the allegations in the petition which must be taken as true as against a general demurrer that—

When the petition for road district No. 1 came on for hearing, "the signers of said petition, through their attorneys, thereunto duly authorized, requested the court in writing for leave to amend the petition. * * * That the court would not countenance any course of action with respect thereto looking to a change, except upon the consideration that the petitioners wholly withdrew their former petition and filed another petition in lieu thereof, * * * and at this time informed the plaintiffs and their said attorneys that it was the opinion of the court that the request for leave to amend said petition should be made by the petitioners personally, and that they had no right to be represented by counsel, and that the

court did not know whether counsel representing petitioners had authority to act for them; thereupon the attorneys for plaintiffs requested the court to grant them time within which to present written credentials from the plaintiffs and other petitioners for said road district."

It is further pointed out that before the commissioners' court granted the petition for road district No. 2, the petitioners for road district No. 1 "filed with the court, bearing the signatures of more than 50 of the resident property taxpaying voters of road district 1, a written confirmation of the request theretofore made by their attorneys to change and amend the petition for said district, and in said written confirmation ratified and confirmed the act of their said attorneys in requesting said change and amendment."

[11] Appellant also contends, in that connection, that the petition for the establishment of such a district may or may not mention the amount of the bonds proposed to be issued, since that is a matter for determination by the commissioners' court, and the fixing of the amount of the bonds in the petition for a sum in excess of what would be legal is immaterial, citing in support of that contention article 627, Rev. Statutes; Robertson v. Kay (Tex. Civ. App.) 240 S. W. 1013; Moore v. Commissioners' Court of Bell County (Tex. Civ. App.) 175 S. W. 849; 17 R. C. L. 1033. Article 627 clearly requires the petition for the establishment of a road district to be in writing. That requirement seems at least to include the entire petition; and under the decision of our Supreme Court in Haverbekken v. Hale, 109 Tex. 106, 204 S. W. 1162, and other authorities cited in our original opinion, the filing of such a petition was necessary to vest the commissioners' court with jurisdiction to grant the petition and order the election.

[12] Even though it be conceded that the attorneys who first presented the petition for road district No. 1 had parol authority from the signers of the petition to make the radical change therein to a petition for the issuance of bonds for $100,000 instead of bonds for $325,000, and the rate of interest thereon from 5½ per cent. to 5 per cent., yet we cannot say that the refusal of the commissioners' court to allow such an amendment was such an abuse of discretion as to require the granting of the relief prayed for in this suit. And the same can be said of the action of the court in granting the petition for road district No. 2 after attorneys for road district No. 1 had presented written authority from 50 of the signers of the petition therefor to them to so change the original petition as to fix the amount of the bond issue at $100,000 instead of $325,000, and the rate of interest at 5 per cent. instead of 5½ per cent., in the absence of any statute requiring the petition for road district No. 1 to be given priority of hearing over the petition for road district No. 2.

The motion for rehearing is overruled.