

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
~~WILKERSON~~
ATTORNEY GENERAL

Honorable B. F. Reynolds
County Attorney
Throckmorton, Texas

Dear Sir:

Opinion No. O-1159
Re: Can a commissioners' court use
money that has been voted for
the purpose of building county
highways for purchasing a site
for a state highway warehouse?

Your request for an opinion on the above-stated question has been received by this office.

Articles 701, 702 and 703, Revised Civil Statutes, read as follows:

"Article 701. The bonds of a county or an incorporated city or town shall never be issued for any purpose unless a proposition for the issuance of such bonds shall have been first submitted to the qualified voters who are property tax payers of such county, city or town."

"Article 702. In all cases when the governing body of a county, city or town shall order an election for the issuance of the bonds of the county, city or town or of any political subdivision or defined district of a county, such body shall at the same time submit the question of whether or not a tax shall be levied upon the property of such county, city or town, political subdivision or defined district for the purpose of paying the interest on the bonds and to create a sinking fund for the redemption of the bonds."

"Art. 703. The proposition to be submitted shall distinctly specify:

"1. The purpose for which the bonds are to be issued;

"2. The amount thereof;

"3.  The rate of interest;

"4.  The levy of taxes sufficient to pay the annual interest and provide a sinking fund to pay the bonds at maturity;

"5.  The maturity date, or that the bonds may be issued to mature serially within any given number of years not to exceed forty."

Articles 6663, 6673 and 6674b transfer to the State Highway Commission jurisdiction over highways of the State which commissioners' court previously had.  Article 6674q-4 reads as follows:

"All further improvement of said State Highway System shall be made under the exclusive and direct control of the State Highway Department and with appropriations made by the Legislature out of the State Highway Fund.  Surveys, plans and specifications and estimates for all further construction and improvement of said System shall be made, prepared and paid for by the State Highway Department.  No further improvement of said System shall be made with the aid of or with any moneys furnished by the counties except the acquisition of rights of way which may be furnished by the counties, their subdivisions or defined road districts.  But this shall in no wise affect the carrying out of any binding contracts now existing between the State Highway Department and the Commissioners Court of any county, for such county, or for any defined road district. In the development of the System of State Highways and the maintenance thereof, the State Highway Commission shall, from funds available to the State Highway Department, provide:

"(a)  For the efficient maintenance of all highways comprising the State System.

"(b)  For the construction, in cooperation with the Federal Government to the extent of Federal Aid to the State, of highways of durable type of the greatest public necessity.

"(c)  For the construction of Highways, perfecting and extending a correlated system of State Highways, independently from State Funds."

The case of Iverson et ux v. Dallas County, 110 S. W.

(2) 255 held among other things that Articles 6663, 6673, 6673a, and 6674b, and the amendments thereto, attempting to set up a complete uniform system of state highways, and authorizing Highway Commissioners to take over State highways, stripped counties of any authority to let contracts for the construction or maintenance of any public road comprising a portion of the state highway system, either in their own names or as agents of the State, except in specific instances and strictly in keeping with the provisions of the Acts.

The money mentioned in your telegram, we presume, is money derived from the sale of bonds duly authorized by the qualified voters for the purpose of building county highways.

We quote from Texas Jurisprudence, vol. 21, p. 686, as follows:

"It is elementary that the funds derived from the sale of bonds may not be diverted from the purposes specified in the proposition submitted to the electors. If follows that where a departure from the proposition appearing on the ballot paper is alleged, the only question before the court is whether the expenditure contemplated is within or without the proposition upon its true construction. Construing propositions to this end, it has been held that 'road' includes a bridge constituting a necessary link in the road, and that 'turnpikes' mean hard-surfaced roads, not necessarily toll-roads. And, seeing that both propositions leave the specific allocation of the funds to the commissioners' court, there is no variance between a proposition for expenditure on roads 'throughout' the county and an order for issuance of bonds for construction 'within and for' the county."

Also see thecases of Aransas County v. Coleman-Fulton Pasture Co., 191 S.W. 553; Heathman v. Singletary, 12 S.W. (2) 150; Huggins v. Vaden, 259 S.W. 204; and Grayson County v. Harrell, 202 S.W. 160.

We quote from the case of Carroll v. Williams, 202 S.W. 504, decided by the Supreme Court, as follows:

"* * *section 9 of article 8 of our state Constitution * * * inhibits any and all transfers of tax money from one to another of the sever classes of funds therein authorized, and, as a sequence, the expenditure, for one purpose therein defined, of tax money raised ostensibly for another such purpose.

The immediate purpose in so prescribing a separate maximum tax rate for each of the classes of purposes there enumerated is, no doubt, to limit, accordingly, the amount of taxes which may be raised from the people, by taxation, declaredly for those several purposes or classes of purposes, respectively. But that is not all. The ultimate and practical and obvious design and purpose and legal effect is to inhibit excessive expenditures for any such purpose or class of purposes. By necessary implication said provisions of section 9 of article 8 were designed, not merely to limit the tax rate for certain therein designated purposes, but to require that any and all money raised by taxation for any such purpose shall be applied, faithfully, to that particular purpose, as needed therefor, and not to any other purpose or use whatsoever. Those constitutional provisions control, not only the raising, but also the application, of all such funds; * * *

"True, the Constitution does not say, in so many words, that money raised by a county, city, or town, by taxation for one such purpose shall never be expended for any other purpose -- not even for another of the five general classes of purposes defined and approved in said section 9 -- but that, we think, is its plain and certain meaning and legal effect. The very definitions of those several classes of purposes, and the declaration of authority to tax the people therefor, respectively, coupled, as they are, in each instance, with a limitation of the tax rate for that class, must have been predicated upon the expectation and intent that, as a matter of common honesty and fair dealing, tax money taken from the people ostensibly for one such specified purpose shall be expended, as needed, for that purpose alone, as well as that the tax rate for that particular class, in any one year, shall not exceed the prescribed maximum."

Also see the case of Commissioners' Court of Henderson County et al v. Burte et al, 262 S. W. 94.

In view of the foregoing authorities, you are respectfully advised that it is the opinion of this department that the Commissioners' Court cannot use money that is derived from the sale of bonds duly issued for the purpose of building county highways for purchasing a site for a state highway warehouse.

Trusting that the foregoing answers your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Ardell Williams
Ardell Williams
Assistant

AW-MR-wc


APPROVED JUL 31, 1939
s/W. F. Moore
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/RWF Chairman